EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Guillermo Rivera Báez<br><br>    Peticionario<br><br>            v.<br><br>Ana J. Jaume Andujar, en representación de Ana A. Rivera Jaume<br><br>    Recurrida | Certiorari<br><br>2002 TSPR 100<br><br>157 DPR _____ |

Número del Caso: AC-2001-8


Fecha: 28/junio/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional III


Juez Ponente:

                    Hon. Jorge L. Escribano Medina


Abogado de la Parte Peticionaria:
                    Lcdo. Oscar A. Vega Arce


Abogados de la Parte Recurrida:
                    Lcdo. Luis M. Rivera Santana
                    Lcdo. Miguel Sarriera Román


Materia: Impugnación de Paternidad



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Guillermo Rivera Báez

    Peticionario

       v.

                            AC-2001-8

Ana N. Jaume Andujar, en
representación de Ana A.
Rivera Jaume

    Recurrida

**Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN**

**San Juan, Puerto Rico, a 28 de junio de 2002**

**I**

**El 28 de junio de 1988, la Sra. Ana N. Jaume Andujar (en adelante Sra. Jaume) en representación de su hija Ana Aurely, presentó una demanda jurada de filiación en contra del Sr. Guillermo Rivera Báez (en adelante Sr. Rivera). Alegó que sostuvo relaciones sexuales con el Sr. Rivera durante los días 4 al 6 de julio de 1987, mientras éste se encontraba de vacaciones en Puerto Rico, y que posteriormente, durante ese mismo mes, ella se trasladó al estado de Nueva York, donde pasó unas vacaciones con el demandado y nuevamente sostuvieron**

relaciones íntimas.  Alegó la Sra. Jaume que producto de dichas relaciones quedó embarazada de Ana Aurely.[1] Conforme a estas alegaciones, la demandante solicitó al tribunal que declarase a la menor hija del Sr. Rivera, y le concediese una pensión alimentaria por la cantidad de cien (100) dólares mensuales.

La Sra. Jaume le informó además al tribunal que el demandado se encontraba fuera de Puerto Rico, pues era residente del estado de Nueva York.  Por esta razón, conjuntamente con la demanda, la Sra. Jaume solicitó del tribunal una orden para emplazar al Sr. Rivera mediante edicto.  <u>Indicó que la dirección del demandado era el P.O. Box 21163, Woodheaven, N.Y. 11421</u>.  El tribunal de instancia autorizó el emplazamiento mediante edicto, de acuerdo con el trámite que establece la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. IV.

Copia de la demanda, la orden para emplazar mediante edicto y del emplazamiento le fueron enviadas al Sr. Rivera a la dirección provista por la demandante, mediante correo certificado con acuse de recibo, el día 17 de octubre de 1988.  No obstante, el sobre con los referidos documentos fue devuelto por el servicio de correos el 6 de diciembre de 1988.  En él se indicó que la correspondencia no había sido reclamada ('unclaimed') por el destinatario.

Así las cosas, el foro de instancia celebró vista y dictó sentencia en rebeldía contra el demandado el

---

[1]  La niña nació el 29 de marzo de 1988.

14 de mayo de 1989. El tribunal estimó probados los hechos alegados en la demanda de filiación. Igualmente, estimó probadas las alegaciones de que la Sra. Jaume no utilizó métodos anticonceptivos pues el demandado le había dicho que no podía procrear, y que luego de quedar embarazada la Sra. Jaume le notificó al demandado de su estado. Éste le dijo inicialmente que la ayudaría, pero más adelante le indicó que no asumiría ninguna responsabilidad por la criatura.[2] A la luz de estos hechos, el tribunal declaró a la menor hija del Sr. Rivera y ordenó su inscripción como tal en el Registro. También le impuso una pensión alimentaria de cien (100) dólares mensuales.

Aproximadamente ocho (8) años más tarde, el 14 de agosto de 1997, el Sr. Rivera presentó ante el tribunal de instancia una demanda sobre impugnación de paternidad. Alegó que vivía en el 175-39 Dalny Road Jamaica Estates, New York, NY, 11432; que desconocía del nacimiento de la menor Ana Aurely hasta el día 19 de marzo de 1997, cuando recibió una comunicación del Tribunal de Familia del estado de Nueva York en la cual se le informó del registro de la sentencia del tribunal de instancia de Puerto Rico que decretó el estado filiatorio de la menor; y que, en su mejor recuerdo,

---

[2] Estos hechos no fueron específicamente alegados en la demanda de filiación, pero sí se encuentran recogidos en la sentencia dictada por el tribunal de instancia. Entendemos que estas determinaciones debieron surgir de las declaraciones de la Sra. Jaume en la vista que celebró el foro de instancia antes de dictar sentencia. Cabe señalar que el testimonio de la Sra. Jaume fue el único vertido en dicha vista, según surge de la minuta.

<u>nunca recibió notificación de dicho procedimiento en su contra</u>.

El Sr. Rivera adujo además que conoció a la Sra. Jaume en el año 1987 por medio de su hermano Samuel Rivera, con quien ésta sostenía una relación sentimental en aquel entonces. Como fundamento adicional a su solicitud, indicó que formó parte de las fuerzas armadas norteamericanas durante la guerra de Vietnam, donde estuvo expuesto al llamado "agente naranja", y como consecuencia de esto había quedado estéril, condición que prevalecía a la fecha en que alegadamente Ana Aurely había sido concebida. Por último, sostuvo que estaba "dispuesto a someterse a cuantas pruebas científicas sea menester para establecer que no es el padre de la menor Ana Aurely."

La Sra. Jaume contestó la demanda negando todas las alegaciones por desconocimiento. Alegó como defensas que el Sr. Rivera conocía de la paternidad imputada desde el 1989 y nada hizo al respecto, y que la sentencia dictada en su contra ya era final y firme.

Se señaló una vista sobre el estado de los procedimientos, la cual fue suspendida a petición de las partes por no haber concluido éstas el descubrimiento de prueba. Posteriormente, el tribunal de instancia emitió, a solicitud de las partes, una orden para que el servicio de correos certificase a quién le correspondía la dirección a la cual fue dirigida la notificación del emplazamiento y la demanda original de filiación, y otra orden

dirigida al Departamento de Veteranos, Oficina de Regional de Nueva York, para obtener copia de los expedientes médicos del Sr. Rivera, con miras a aclarar su alegación de ser estéril.

Así las cosas, el 7 de abril de 2000, la Sra. Jaume radicó una "Moción Informativa" juramentada, en la cual solicitó la desestimación de la acción presentada por el Sr. Rivera.  Fundamentó su solicitud en que el emplazamiento en el caso de filiación se hizo conforme al trámite establecido en la Regla 4.5 de Procedimiento Civil, supra, notificándose el mismo a la última dirección conocida del demandado, el P.O. Box 21163, Woodheaven, NY, 11421.  Sostuvo que conocía personalmente dicha dirección ya que era la utilizada por la hermana del demandado para enviarle correspondencia, y que ésta había mantenido al Sr. Rivera enterado de la situación y del nacimiento de la niña. Alegó la Sra. Jaume que por haber estado enterado el aquí peticionario del nacimiento de la menor, y haber sido emplazado y notificado conforme a derecho, comenzaron a decursar los términos de caducidad de tres (3) y seis (6) meses dispuestos en el Art. 117 del Código Civil, 31 L.P.R.A. § 465, para radicar una demanda de impugnación de paternidad, por lo que solicitó la desestimación de la demanda presentada por el Sr. Rivera.

El Sr. Rivera se opuso a esta moción de desestimación, señalando que el emplazamiento fue defectuoso pues se notificó el mismo a una dirección

postal que no le constaba de propio conocimiento a la demandante. Adujo además, que según la Regla 4.5, la notificación del emplazamiento mediante edictos debe ser enviada a una dirección residencial y no a una postal. Indicó también que, como cuestión de hecho, la copia del emplazamiento y de la demanda enviada a la dirección que la Sra. Jaume le proveyó al tribunal de instancia, le fue devuelta por el servicio postal sin haber sido reclamada, por tanto el tribunal local nunca adquirió jurisdicción sobre su persona. Por último, señaló que "ni durante el año 1988, ni antes del 19 de marzo de 1997 el aquí demandante recibió notificación alguna de hija ni del procedimiento de filiación seguido en Puerto Rico."

El tribunal de instancia acogió la moción presentada por la Sra. Jaume como una solicitud de sentencia sumaria, y procedió a desestimar sumariamente la acción presentada por el Sr. Rivera. El tribunal determinó que el Sr. Rivera fue emplazado conforme a derecho, y que por tanto la acción de impugnación de paternidad había caducado.

Inconforme, el Sr. Rivera solicitó revisión ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Dicho foro confirmó el dictamen del tribunal de instancia. Determinó que lo verdaderamente crucial en el emplazamiento mediante edictos es que se envíe la notificación a la última dirección conocida en el lugar donde la persona haya residido, o sea, algún estado o ciudad. Esta

dirección puede ser una dirección postal, sin que sea requisito que la notificación se envíe a la dirección residencial del demandado. Conforme a esto, el foro apelativo intermedio concluyó que el emplazamiento de autos fue hecho conforme a derecho, por lo que desde el momento de la notificación comenzó a decursar el término de caducidad establecido en el Art. 117 del Código Civil, supra para la acción de impugnación de paternidad, término que ya había transcurrido al momento en que el Sr. Rivera presentó la demanda.

Aún inconforme, el Sr. Rivera recurrió ante nos mediante recurso de apelación. Alegó esencialmente que el tribunal local nunca adquirió jurisdicción sobre su persona, que la acción de impugnación de paternidad no había caducado, y que el tribunal de instancia no debió haber dispuesto del caso mediante sentencia sumaria cuando la prueba en el expediente demostraba que existían controversias fundamentales de hechos.

Acordamos revisar y expedimos el recurso, acogiéndolo como certiorari por ser el apropiado. Ambas partes han presentado sus alegatos y con el beneficio de sus argumentos resolvemos.

II

De entrada, se hace imperioso que aclaremos la cuestión relativa al Art. 117 del Código Civil y la

aplicación de los términos establecidos en el mismo a la situación de autos.

El Art. 117 del Código Civil dispone que:

La acción para impugnar la legitimidad del hijo deberá ejercitarse dentro de los tres (3) meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis (6) meses si estuviere fuera de Puerto Rico, a contar desde que tuvo conocimiento del matrimonio.

Según hemos establecido, los términos dispuestos en este artículo son de caducidad y no de prescripción. Santiago Ojeda v. Cruz Maldonado, 109 D.P.R. 143 (1979). Esto significa que si no se ejercita la acción de impugnación dentro de ese término, se extingue el derecho a la misma.

Sin embargo, resulta de fundamental importancia que aclaremos un aspecto crucial respecto a la acción de impugnación de paternidad y la aplicación de sus referidos términos de caducidad. Según los pronunciamientos de este Tribunal en Calo v. Cartagena, 129 D.P.R. 102 (1991) y Almodóvar v. Méndez, 125 D.P.R. 218 (1990), los términos dispuestos en el citado Art. 117 son de aplicación en dos (2) casos: cuando se trata de una acción para impugnar la paternidad sobre un menor cuya filiación paterna surge directamente del hecho del matrimonio,[3] o cuando se

---

[3] Esta acción puede ser llevada por el marido que impugna la presunción de paternidad procedente del matrimonio, o cuando dicha paternidad es impugnada por el que alega ser el verdadero padre biológico, o cuando es la madre del hijo nacido dentro del matrimonio quien impugna la paternidad del esposo.

pretende impugnar el reconocimiento voluntario de un hijo nacido fuera del matrimonio.

Así pues, no cabe hablar del Art. 117 ni de sus términos de caducidad cuando se trata de una acción para establecer la no paternidad sobre un hijo cuya filiación paterna se ha determinado mediante sentencia, ni en casos en los cuales se pretende atacar colateralmente la sentencia que decretó la filiación paterna.

Cuando se trata de un hijo nacido fuera del matrimonio que no ha sido reconocido voluntariamente por su padre, la filiación paterna puede conseguirse por medio de una demanda de filiación, tal como hizo la Sra. Jaume en el caso de autos. En el curso normal de estas demandas, las partes tienen la oportunidad de presentar su mejor evidencia para establecer la paternidad o la no paternidad sobre el menor concernido. La parte que no esté conforme con el decreto final de filiación podrá recurrir de dicha sentencia ante los foros apelativos correspondientes.

Ahora bien, en el caso específico ante nuestra consideración, la sentencia que estableció la filiación de la menor Ana Aurely fue dictada en rebeldía. La parte demandada, el Sr. Rivera, nunca se personó al tribunal, ni compareció mediante moción, ni presentó prueba para establecer la no paternidad. Tampoco solicitó revisión de la sentencia que lo declaró padre de la niña. No es hasta varios años mas tarde que el Sr. Rivera comparece al tribunal

impugnando la validez de la sentencia dictada por el foro de instancia por alegada falta de jurisdicción sobre su persona, y atacando el estado filiatorio de la menor.

A la luz de los hechos y el derecho que hasta ahora hemos expuesto, erraron tanto el tribunal de instancia como el de Circuito al considerar esta acción como una de impugnación de paternidad y desestimar la misma aplicando los términos de caducidad propios de dicha acción. De acuerdo a lo que señaláramos anteriormente, los términos de caducidad dispuesto en el Art.117 no son de aplicación a este caso, pues el Sr. Rivera y la Sra. Jaume no estaban casados al momento del nacimiento de la menor Ana Aurely, y como cuestión de hecho, nunca ha existido un vínculo matrimonial entre éstos. El Sr. Rivera tampoco ha reconocido voluntariamente a la menor.

Sin embargo, nuestro ordenamiento procesal civil le provee a una parte que pretende atacar la validez de un dictamen en circunstancias como la de autos dos (2) mecanismos procesales de fundamental importancia: (1) la moción de relevo de sentencia bajo la Regla 49.2(4) de Procedimiento Civil o (2) el pleito independiente de nulidad de sentencia. Corresponde pues que analicemos si la acción presentada por el Sr. Rivera puede ser considerada bajo alguno de estos dos mecanismos.

III

La Regla 49.2(4) provee un vehículo procesal para que una parte pueda solicitar el relevo de una sentencia en su contra, por alguna de las causales que la propia regla dispone, [4] siempre y cuando dicha acción se presente dentro de los seis (6) meses de haberse registrado la sentencia. No obstante, aun después de transcurrido el referido término de seis (6) meses, la propia regla reconoce el poder de un tribunal para conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento; conceder un remedio a una parte que en realidad no hubiese sido emplazada; **y dejar sin efecto una sentencia por motivo de fraude al tribunal.** Regla 49.2, supra. Véase además, Figueroa v. Banco de San Juan, 108 D.P.R. 680, 688 (1979). **(Énfasis suplido.)**

Generalmente, este tipo de acción se admite cuando la sentencia es nula, ya que ésta es inexistente. Lo anterior se manifiesta, entre otras ocasiones, cuando la sentencia se ha dictado sin jurisdicción sobre la materia o las partes en un pleito. También hemos considerado, en el contexto de la Regla 49.2, que una sentencia es nula cuando el

---

[4] En términos generales, estas causales son: (1) error, inadvertencia, sorpresa o negligencia excusables; (2) descubrimiento de prueba esencial; (3) fraude, falsa representación u otro tipo de conducta impropia de la parte contraria; (4) nulidad de sentencia; (5) sentencia satisfecha, cumplida o renunciada; (6) cualquier otra razón que justifique la concesión de un remedio.

tribunal ha actuado de una manera inconsistente con el debido procedimiento de ley. **Véase E.L.A. v. Tribunal Superior**, 80 D.P.R. 692 (1962). (Énfasis suplido.)

No obstante, el reconocimiento de esta acción no es llave maestra para dejar sin efecto sentencias válidamente dictadas. La reserva de derecho de la acción independiente está predicada en la justicia fundamental de la reclamación. Véase Alicea Álvarez v. Valle Bello, 111 D.P.R. 847, 853 (1982). El esquema amplio y abarcador de remedios que provee la Regla 49.2 reduce considerablemente el ejercicio de esta acción independiente a los casos en que ha transcurrido el término fatal de seis meses y las circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos. **Figueroa v. Banco de San Juan**, supra, pág. 689.

Al analizar las alegaciones del Sr. Rivera tanto en la demandada presentada por éste como en su oposición a la desestimación presentada por la madre de la menor, en las cuales hace señalamientos específicos a los efectos de que el tribunal nunca adquirió jurisdicción sobre su persona, encontramos que la acción del Sr. Rivera puede catalogarse correctamente como una de relevo de sentencia por el

fundamento de falta de jurisdicción. Por tanto, es necesario que analicemos las alegaciones del Sr. Rivera a los efectos de que no fue emplazado conforme a derecho. Veamos.

## IV

El emplazamiento es el mecanismo procesal de notificación que se utiliza para que un tribunal pueda adquirir jurisdicción sobre la persona del demandado, de forma tal que éste quede obligado por el dictamen que finalmente se emita. Su propósito principal es notificar al demandado, a grandes rasgos, de que se ha instado una acción judicial en su contra, para así garantizarle su derecho a ser oído y defenderse si así lo desea. Por esta razón, los requisitos para el emplazamiento deben cumplirse estrictamente. Véase, Márquez v. Barreto, 143 D.P.R. 137 (1997); Bco. Central Corp. v. Capitol Plaza, Inc., 135 D.P.R. 760, 763 (1994). Es mediante el emplazamiento que se adquiere jurisdicción sobre la persona del demandado. First Bank v. Inmob. Nac., Inc., 144 D.P.R. 901, 912 (1998).

Las Reglas de Procedimiento Civil establecen dos maneras para diligenciar el emplazamiento: de forma personal o por edictos. En este caso nos ocupa el emplazamiento mediante edicto, el cual está regulado por la Regla 4.5 de Procedimiento Civil. En lo pertinente, esta regla dispone lo siguiente:

Cuando la persona a ser emplazada *estuviere fuera de Puerto Rico*, **o estando en Puerto Rico, no pudiere ser localizada, o se ocultare para no ser emplazada, o si fuere corporación extranjera sin agente residente, y así se comprobare a satisfacción del tribunal mediante declaración jurada, con expresión de dichas diligencias y apareciere también de dicha declaración, o de la demanda jurada presentada, que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden disponiendo que el emplazamiento se haga por edicto....**

**La orden dispondrá que la publicación se haga una sola vez en un periódico de circulación diaria general en la Isla de Puerto Rico. La orden dispondrá, además, que dentro de los diez (10) días siguientes a la publicación del edicto, se le dirija al demandado una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo o cualquiera otra forma de servicio de entrega de correspondencia con acuse de recibo...** al lugar de su última residencia conocida**, a no ser que se justifique mediante declaración jurada que a pesar de los esfuerzos realizados, *con expresión de éstos,* no ha sido posible localizar residencia alguna conocida del demandando, en cuyo caso el tribunal excusará el cumplimiento de esta disposición. (Énfasis suplido.)**

De una lectura de la disposición citada, se desprende que el emplazamiento mediante edictos está contemplado para cuatro (4) situaciones específicas: (1) cuando la persona a ser emplazada se haya fuera de Puerto Rico; (2) cuando la persona a ser emplazada, aunque se encuentre en Puerto Rico, no puede ser localizada; (3) cuando la persona a ser emplazada, estando en Puerto Rico, se oculta para no ser

emplazada; y (4) cuando se trata de una corporación extranjera sin agente residente.

En casos en que el demandado se encuentre fuera de Puerto Rico y la parte demandante ignora la dirección del demandado fuera de Puerto Rico, se exige prueba de las diligencias específicas para localizar al demandado antes de expedir el emplazamiento por edicto y relevar al demandante del envío por correo de los documentos pertinentes. Por el contrario, cuando el demandado se encuentra fuera de Puerto Rico, y al demandante le consta el lugar específico donde éste se encuentra y así lo informa al tribunal, no se requiere la comprobación de diligencias vigorosas y honesto esfuerzo para citarle personalmente,[5] y es compulsorio el envío por correo certificado con acuse de recibo de la copia de la demanda, la orden para emplazar por edictos y el edicto mismo.

En estas circunstancias, la Regla 4.5 exige que dichos documentos sean enviados al lugar de la última residencia conocida del demandado. El significado y alcance de este requisito fue interpretado por este Tribunal en Rodríguez v. Nasrallah, 118 D.P.R. 93 (1986). Allí adoptamos el criterio que siguiera el Tribunal de Ohio en el caso de Evans v. Galloway, 701 P.2d 659, 661 (1985), donde se señaló que:

> [W]e are inclined to follow those courts which have held that, for persons engaged in actionable conduct who subsequently move leaving no forwarding

---

[5] Véase, José A. Cuevas Segarra, Tratado de Derecho Procesal Civil. Tomo I, Ed. 2000, pág. 175.

> address by which their whereabouts may be determined, service of summons by publication in a newspaper of general circulation in the area, and a mailing of copies of the summons and complaint to that party's last known address is reasonably calculated under all the circumstances to apprise that party of the pendency of an action.

Así pues, el criterio adoptado por este Tribunal es a los efectos de que se cumpla con el requisito de notificación al lugar de la última residencia conocida del demandado si dicha notificación se envía a una dirección que esté razonablemente calculada, dentro de las circunstancias particulares del caso, para darle aviso a la parte contraria de la reclamación que se ha presentado en su contra. Rodríguez v. Nasrallah, supra, pág. 102.

De lo anterior se desprende que nada en la Regla 4.5 exige, como alega el aquí peticionario, que la notificación de la demanda y del emplazamiento por edicto a una persona que se encuentre fuera de Puerto Rico tenga que ser enviado única y exclusivamente a una dirección residencial. Del texto mismo de la Regla 4.5 y su jurisprudencia interpretativa surge que el requisito esencial con relación a la dirección donde se dirija la notificación es que dicha dirección sea una en el lugar, o sea, ciudad, estado o país, donde haya ubicado la última residencia conocida del demandado, y que la misma tenga una posibilidad razonable, dentro de las circunstancias particulares del caso, de informar al demandado de la reclamación en su contra. Lógicamente, esa dirección puede ser

una dirección postal dentro del último lugar de residencia conocida del demandado, **siempre que se pruebe a satisfacción del tribunal que el envío de la notificación de la demanda y el emplazamiento a esa dirección razonablemente le informará al demandado de la reclamación en su contra**.

A la luz de lo expuesto, debemos concluir que el mero hecho de que se haya notificado el emplazamiento por edictos a una dirección postal en el estado donde residía el demandado, Nueva York, no anula, sin más, el emplazamiento hecho en este caso. Una dirección postal puede cumplir perfectamente con el requisito de razonabilidad establecido en Rodríguez v. Nasrallah, supra. Por lo tanto, concluimos que el emplazamiento hecho al Sr. Rivera **no es nulo por haberse enviado copia del mismo a una dirección postal**.

Esta determinación, sin embargo, no dispone de la controversia ante nos. Aun cuando entendemos que es inmeritorio el planteamiento del peticionario a los efectos de que el emplazamiento es nulo por haber sido enviada la notificación a una dirección postal y no a una dirección residencial, no podemos ignorar las alegaciones de éste a los efectos de que la notificación de dicho emplazamiento y de la demanda **de filiación** le fue devuelta por el servicio de correos a la parte demandante, **ya que la correspondencia no fue reclamada**. De hecho, consta en el expediente copia de la carátula del sobre certificado en el cual

se le envió al Sr. Rivera copia de la demanda y del emplazamiento a la dirección provista por la Sra. Jaume, y del mismo surge que dicha correspondencia fue devuelta por la oficina de correos a la remitente. Esta información le constaba al tribunal de instancia desde antes de que dicho foro dictara la sentencia que declaró al Sr. Rivera como padre de la menor.

Esta realidad no puede tomarse livianamente. El emplazamiento es un trámite medular para el cumplimiento con el debido procedimiento de ley de un demandado, y afecta directamente la jurisdicción del tribunal.

Debemos evaluar pues qué consecuencias tiene, si alguna, el hecho de que, autorizado y realizado un emplazamiento mediante edictos, la correspondencia conteniendo los documentos relacionados con dicho emplazamiento le sea devuelta por el servicio postal a la parte demandante por no haber sido reclamada por el destinatario en la dirección que la parte demandante le proveyera al tribunal.

V

La controversia que nos ocupa es una cuestión novel en nuestra jurisdicción. No obstante, un análisis de la jurisprudencia norteamericana relacionada nos puede ayudar a arrojar luz sobre tan delicado asunto.

De entrada, está firmemente establecido en la jurisprudencia federal que en casos en que se permite un emplazamiento distinto al emplazamiento personal, entiéndase, mediante correo certificado o por edictos, no es necesario que el demandado reciba físicamente los documentos relacionados con el emplazamiento.  A estos efectos se ha establecido que "actual receipt of process is not the test either under due process or the full faith and credit clause." Polanski v. Richardson, 351 F.Supp. 1066 (1972); Atherton v. Atherton, 181 U.S. 155 (1901).  "Actual notice to a defendant without proper service is not sufficient to convey upon court jurisdiction to render a default judgment against him."  Pittman v. Trenton Energy Corp., 842 F.Supp. 918, 922 (1994).

El criterio utilizado para determinar la validez del emplazamiento es que el método que se utilice sea uno que razonablemente informe al demandado sobre la pendencia de una reclamación en su contra.  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); Rodríguez v. Nasrallah, supra.  Entre estos mecanismos se encuentra el emplazamiento mediante la publicación de edictos.

La mayor parte de las jurisdicciones que, como Puerto Rico, permiten este tipo de emplazamiento, requieren que copia del emplazamiento y la demanda se envíen mediante correo a la parte demandada.  Dicho requisito ha sido interpretado estrictamente.  Así, en Brady v. Brauer, 529 A.2d 159 (1987), el tribunal

determinó que no se adquirió jurisdicción sobre la persona del demandado, emplazado mediante edictos, cuando el envío por correo de copia del emplazamiento y la demanda se hizo a la última dirección conocida del demandado en el estado de la Florida, y la parte demandante tenía conocimiento de que el demandado vivía en el estado de Massachussets, además del hecho de que un primer intento de emplazar al demandado mediante correo certificado a esa misma dirección había resultado infructuoso. También se ha interpretado que cuando la dirección que se ofreció en la declaración jurada para autorizar el emplazamiento mediante edicto ya no es la dirección del demandado, se requiere del demandante un esfuerzo razonable para encontrar una dirección correcta donde la notificación pueda ser enviada. **Board of County Comissioners** v. **Knight**, 574 P.2d 575, 579 (1978).[6] **En ese caso, se trataba de una demandada emplazada mediante edictos a la cual simplemente no se le envió notificación de la demanda y del emplazamiento. No obstante, el tribunal expresó que: "[H]ad the publication notice been mailed to Mrs. Knight at the address given in the affidavit and** returned undeliverable **by the postal service, then** due process would require a reasonable effort made by the county

---

[6] If the party is no longer at the address listed [in the affidavit of publication] then Mullane, supra, requires the affiant to make reasonable efforts to find a correct address to which notice can be mailed.

to give such notice as could reasonably be calculated to reach her."

Igualmente, la jurisprudencia estatal y federal ha atendido varias controversias relativas a qué sucede cuando un emplazamiento enviado por correo certificado es devuelto por el servicio postal sin haber sido reclamado ("unclaimed"). Aunque esta jurisprudencia no se refiere específicamente al emplazamiento mediante edictos, sino a una forma de emplazamiento mediante correo regular que es permitida por algunos estados, el razonamiento que han seguido los tribunales en ese contexto es ilustrativo para tratar el asunto que aquí nos ocupa.

Así, intepretando la Regla de Procedimiento Civil del estado de Pennsylvania que permite el emplazamiento mediante correo regular, el tribunal de distrito resolvió en Kucher v. Fisher, 167 F.R.D. 397 (1996), que: "A notation by the postal authorities that certified mail went "unclaimed" rather that "refused" is generally insufficient to satisfy the requirements of service by ordinary mail... Unlike refusal, which is intentional, a failure to claim does not alone give raise to the implication that the defendant has deliberately sought to avoid process." Id, pág. 399.[7] En este sentido, se ha determinado que "'unclaimed' could very well mean that the plaintiff gave the wrong address for the defendant, in which case

the defendant would not receive notice, due process would not be observed, and a plaintiff could prevent the process by giving an incorrect address." Pittman v. Trenton Energy Corp., supra. (Interpretando el estatuto de Texas).

De hecho, hemos encontrado que sólo en circunstancias extraordinarias los tribunales federales han encontrado válido un emplazamiento por edictos o por correo regular cuando la notificación de la demanda y el emplazamiento han sido devueltas por el servicio postal. Por ejemplo, en Danz v. Lockhart, 967 P.2d 1075 (1998), el tribunal encontró que el demandado había sido debidamente emplazado, pero esto sólo lo hizo después de examinar la prueba desfilada en una vista evidenciaria que tendía a establecer de manera contundente que el demandado tenía conocimiento de la reclamación en su contra y que efectivamente había rehusado recibir el emplazamiento. Igualmente, en Khanyile v. Brocius, 1993 WL 224721, el tribunal permitió el emplazamiento pero sólo luego de analizar prueba fehaciente de las diligencias seguidas por el demandante para lograr conseguir al demandando.

A la luz de todo lo anterior, analicemos el caso de autos.

VI

---

7    Igual criterio han seguido otras cortes federales y estatales. Véase, Wyatt v. Haese, 649 So.2d 905, 907

Ante el foro de instancia se presentó evidencia, provista por la propia Sra. Jaume, de que el Sr. Rivera no recibió la notificación de la demanda y del emplazamiento, ya que el sobre donde se incluyeron dichos documentos no fue reclamado por éste. El tribunal, ignorando el hecho esencial de que la correspondencia referida fue devuelta por el correo, se conformó con constatar que la demandante había cumplido con los requisitos formales del emplazamiento mediante edictos, y dictó sentencia en rebeldía contra el demandado.

Consideramos que el foro de instancia erró al así proceder. En aras de salvaguardar el debido procedimiento de ley del Sr. Rivera, el tribunal debió, cuando menos, inquirir sobre si efectivamente la Sra. Jaume conocía y estaba segura, en su mejor conocimiento, de que la dirección que le proveyó al tribunal pertenecía o alguna vez perteneció al demandado. El tribunal no debió conformarse con darle entero crédito a la información provista por la Sra. Jaume, cuando tenía de frente evidencia que, como cuestión de realidad, sembraba dudas sobre si la dirección utilizada por la demandante para enviar la notificación de la demanda y del emplazamiento efectivamente era la dirección del Sr. Rivera.

De hecho, no surge de los autos del tribunal de instancia que dicho foro hubiese inquirido sobre cómo

_____

(1995), y Vogus v. Angry, 744 So.2d 934 (1999).

la Sra. Jaume conocía la referida dirección.  No es sino hasta que el Sr. Rivera radicó su acción que, como parte de esos procedimientos, aparecen referencias en el récord a los efectos de que esa dirección, alegadamente, era la utilizada en aquella época por la hermana del Sr. Rivera para enviarle correspondencia.  Tampoco en esa oportunidad el tribunal celebró vista alguna para aclarar estos extremos.

Por otra parte, no podemos ignorar que el propio tribunal de instancia, en reconocimiento de las genuinas controversias de hecho y derecho planteadas por el aquí peticionario emitió unas órdenes para obtener los récords médicos del Sr. Rivera en la Oficina de Veteranos del estado de Nueva York y para obtener una certificación de la oficina de correos en relación a la dirección provista por la demandante para notificar el emplazamiento y la demanda de filiación.  Luego de emitir estas órdenes, inexplicablemente el tribunal decide dictar sentencia sumaria y desestimar la acción del Sr. Rivera fundamentándose en el transcurso de un término de caducidad que como ya explicáramos, no es de aplicación al caso que nos ocupa.

Cabe señalar además, que como cuestión de derecho, en el caso ante nuestra consideración no procedía ni desestimar la acción ni dictar sentencia sumaria.  En primer lugar, es norma claramente establecida en nuestro ordenamiento que al considerar

una moción de desestimación hay que examinar los hechos alegados en la demanda de la manera más favorable al demandante promovido, **y sólo procede la desestimación** si tomando como ciertas las alegaciones, **no se puede deducir la consecución de remedio alguno** bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. <u>Pressure Vessels P.R.</u> v. <u>Empire Gas P.R.</u>, 137 D.P.R. 497, 505 (1994); <u>Agosto</u> v. <u>Mun. de Río Grande</u>, 143 D.P.R. 174, 178 (1997), <u>Unisys</u> v. <u>Ramallo</u>, 128 D.P.R. 842, 858 (1991).  **(Énfasis suplido.)**

Así pues, de una mera lectura de las alegaciones del Sr. Rivera surge con meridiana claridad que el tribunal de instancia no podía desestimar la acción presentada.  El aquí peticionario alegó que no fue debidamente emplazado, que nunca recibió notificación del pleito en su contra y que desconocía de la paternidad que se le imputaba.  Resulta claro que si se toman como ciertas estas alegaciones, lo cual como cuestión de derecho tiene que hacer el tribunal al considerar una moción de desestimación, no puede concluirse que el demandante no tenía derecho a remedio alguno bajo cualesquiera hechos que pudiese probar en apoyo de su reclamación.

Por otra parte, como cuestión de derecho, tampoco procedía dictar sentencia sumaria en este caso.  Hemos establecido que al resolver una moción de sentencia sumaria, el tribunal no puede dirimir credibilidad, sino que tiene que presumir que son

ciertos todos los hechos no controvertidos que se hacen constar en los documentos y las declaraciones juradas admisibles en evidencia, y tiene que verlos de la forma más favorable para la parte que se opone a la moción, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. Este remedio extraordinario, sólo debe concederse cuando el promovente ha establecido su derecho a lo que reclama bajo cualquier circunstancia que resulte discernible de los hechos no controvertidos. La norma es que la sentencia sumaria, siendo un remedio discrecional, sólo se dictará cuando el tribunal esté convencido de que tiene ante sí la verdad de todos los hechos materiales sustanciales y que, por lo tanto, una vista evidenciaria no es necesaria. Véase: Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986); Nassar Rizek v. Hernández, 123 D.P.R. 360 (1989).

Aplicando estos principios normativos, resulta evidente que no procedía que se dictara sentencia sumaria en este caso. De la prueba que obra en el expediente, unida a las alegaciones del Sr. Rivera, surgen claramente hechos y evidencia que tienden a contradecir las alegaciones de la Sra. Jaume en la "moción informativa" juramentada que el tribunal acogió como solicitud de sentencia sumaria. Por tanto, habiendo controversias de hechos, que el tribunal no puede dirimir credibilidad y adjudicar la controversia mediante sentencia sumaria.

Así pues, tomando en consideración lo que hemos expuesto, además de la totalidad de las circunstancias de este caso, las cuales dan indicios de que existe una probabilidad de que el Sr. Rivera no fue emplazado conforme a derecho en el pleito de filiación, y que éste podría tener una buena defensa en los méritos si se le permite presentar prueba médica y científica que pueda establecer que no es el padre de la menor, entendemos que el tribunal de instancia abusó de su discreción y erró al resolver el caso mediante sentencia sumaria. Dicho foro tenía que haber celebrado una vista donde se pudieran aclarar los cruciales aspectos de hecho y de derecho que hemos discutido, muy especialmente el planteamiento jurisdiccional.

Entiéndase que no estamos resolviendo que efectivamente el Sr. Rivera no fue emplazado conforme a derecho, como tampoco estamos decretando la no paternidad de éste en cuanto a la menor. Lo único que estamos resolviendo es: (1) que erraron tanto el tribunal de instancia como el Tribunal de Circuito al aplicar los términos de caducidad del Art. 117 del Código Civil a la situación de autos; y (2) que erró el tribunal de instancia al disponer del caso mediante sentencia sumaria, y también el Tribunal de Circuito al avalar este proceder, cuando existen controversias de hecho que podrían afectar el debido procedimiento de ley del Sr. Rivera, y que justifican la celebración de una vista donde pueda ventilarse la controversia

sobre si el Sr. Rivera fue debidamente emplazado, y se permita a ambas partes presentar prueba para determinar si en las circunstancias del caso se justifica o no el que se decrete la nulidad de la sentencia de filiación.

## VII

Por todos estos fundamentos, se revocan tanto la sentencia emitida por el tribunal de instancia como la dictada por el Tribunal de Circuito de Apelaciones. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Guillermo Rivera Báez

    Peticionario

       v.                        AC-2001-8

Ana N. Jaume Andujar, en
representación de Ana A.
Rivera Jaume

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 28 de junio de 2002

**Por los fundamentos expuestos en la Opinión que antecede, se revocan tanto la sentencia dictada por el Tribunal de Primera Instancia como la dictada por el Tribunal de Circuito de Apelaciones. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.**

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo