Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| CARLOS LAGUILLO TORRES, EDGARDO R. LAGUILLO TORRES<br><br>Recurridos<br><br>v.<br><br>MONSERRATE GONZÁLEZ LUGO, ANNETTE MARTÍNEZ CALDER, SLG COMPUESA POR MONSERRATE GONZÁLEZ LUGO Y ANNETTE MARTÍNEZ CALDER<br><br>Peticionaria | TA2026CE00062 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Cabo Rojo<br><br>Caso Núm.: CB2024CV00884<br><br>Sobre: Incumplimiento de Contrato, Enriquecimiento o Injusto |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

*Grana Martínez, Jueza Ponente*

### RESOLUCIÓN

En San Juan, Puerto Rico, a 12 de febrero de 2026.

Comparece ante nos Annette Martínez Calder (en adelante la "Peticionaria") mediante una Petición de *Certiorari* instado el 15 de enero de 2026. En su recurso, nos solicita que revoquemos la Resolución emitida por el Tribunal de Primera Instancia (en adelante "TPI o foro primario") del 21 de noviembre de 2025.

Los hechos pertinentes para comprender la determinación que hoy tomamos se detallan a continuación.

### I.

El 26 de diciembre de 2024, Carlos S. Laguillo Torres y Edgardo R. Laguillo Torres (en adelante, los "Recurridos") presentaron una Demanda en el TPI en torno a cobro de dinero y daños por incumplimiento de contrato.[1] Según se desprende de la Demanda, las partes suscribieron un contrato por la suma de

---

[1] Véase Ent. Sum. TPI. Núm. 1.

$2,500.00 con el propósito de que se presentaran servicios de agrimensura dirigidos a la segregación de una porción de una finca ubicada en el municipio de Mayagüez. [2] Respecto a la finca que iba a ser segregada, los Recurridos realizaron un contrato de opción de compraventa con un tercero, para venderle una porción del terreno.[3] La segregación no pudo realizarse y por consiguiente la compraventa tampoco.[4]

El 9 de enero de 2025, se diligenció el emplazamiento al Sr. Monserrate González Lugo (en adelante, el "Sr. González").[5]

El 4 de junio de 2025, el Sr. González presentó su Contestación a Demanda y Reconvención. [6] En resumidas cuentas, negó la mayoría de las alegaciones. [7] Se desprende del escrito que la cantidad reclamada en cobro de dinero era un depósito y no un pago total por sus servicios profesionales.[8] También señalaron que solicitaron el permiso correspondiente en la Oficina de Gerencia de Permisos bajo el número de caso 2024-581634-PCU-300309. [9]

Luego, el 6 de junio de 2025, los Recurridos presentaron una *Moción en Cumplimiento de Orden y Solicitud para Enmendar la Demanda para Incluir a la Conyugue* entiéndase la Sra. Annette Martínez Calder (en adelante, "la Peticionaria").[10] El 13 de junio de 2025, el TPI declaró "Ha Lugar" la enmienda a la Demanda y solicitó a la secretaría que se expidieran los emplazamientos.[11]

El 23 de julio de 2025, se diligenció el emplazamiento a la Peticionaria.[12] Según consta en la declaración del emplazador, el emplazamiento se llevó a cabo en la inmediata presencia de la

---

[2] *Íd.*
[3] *Íd.*
[4] *Íd.*
[5] Véase Ent. Sum. TPI. Núm. 4.
[6] Véase Ent. Sum. TPI. Núm. 11.
[7] *Íd.*
[8] *Íd.*
[9] *Íd.*
[10] Véase Ent. Sum. TPI. Núm. 24.
[11] Véase Ent. Sum. TPI. Núm. 25.
[12] Véase Ent. Sum. TPI. Núm. 31.

peticionaria a la dirección física de "Carr.114. Km. 9.4. Hormigueros, PR 00660" a las 7:30PM.[13]

El 20 de octubre de 2025, la Peticionaria presentó una *Moción en Solicitud de Desestimación por Insuficiencia del Diligenciamiento del Emplazamiento*.[14] La peticionaria señaló en el escrito que no fue emplazada ni personalmente, ni en su inmediata presencia. Además, según surge de la moción y de una declaración jurada,[15] anejada se expuso que:

> [H]ace aproximadamente [dos] 2 meses, su esposo encontró un sobre o documento dejado en el portón frontal de su propiedad. Que dicho documento no les fue entregado a la compareciente ni su esposo de ninguna forma. Que dicho documento fue dejado en el portón sin que nadie les avisara o le diese notificación alguna.
> Que al abrir dicho sobre, su esposo observó que el documento estaba dirigido a la compareciente, pero al desconocer la naturaleza, o de quien le dejo en el portón, procedió a guardarlo, sin informarle a la compareciente sobre dicho documento.[16]

El 3 de noviembre de 2025, el Recurrido formuló su *Oposición a solicitud de Desestimación y en Solicitud de Vista Evidenciaría*, debido a que se quiso impugnar el diligenciamiento del emplazamiento.[17]

El 20 de noviembre de 2025, el TPI emitió una Resolución en la cual declaró "No Ha Lugar" a la Moción de Desestimación.[18] Como parte de la vista evidenciaria testificaron, el emplazador Christian Rodríguez Rodríguez y la Peticionaria.[19] Destacamos, que el foro primario no le dio credibilidad en su testimonio a la Peticionaria.[20] Dado que, omitió información en la declaración jurada que vertió en corte, así como, que su testimonio fue impugnado.[21]

---

[13] Véase Ent. Sum. TPI. Núm. 31. Anejo I.
[14] Véase Ent. Sum. TPI. Núm. 37.
[15] *Íd.* Anejo I.
[16] Véase Ent. Sum. TPI. Núm. 37. pág. 2.
[17] Véase Ent. Sum. TPI. Núm. 39.
[18] Véase Ent. Sum. TPI. Núm. 47.
[19] *Íd.*
[20] *Íd.*
[21] *Íd.*

El 8 de diciembre de 2025, la Peticionaria presentó una *Moción en Solicitud de Reconsideración*.[22] Por otro lado, el 17 de diciembre de 2025, el Recurrido instó su *Oposición a Moción de Reconsideración*.[23] El 19 de diciembre de 2025, el TPI emitió su Resolución en la cual declaro "No Ha Lugar" a la Moción de Reconsideración.[24]

Inconforme con esta determinación, el 15 de enero de 2026, la Peticionaria acudió al Tribunal de Apelaciones y presentó una Petición de *Certiorari*, en la cual expuso los siguientes señalamientos de error:

A. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Cabo Rojo, al declarar No Ha Lugar la moción de desestimación por insuficiencia del diligenciamiento de emplazamiento y convalidar la adquisición de jurisdicción personal sobre la Peticionaria, al concluir que el emplazamiento alegadamente diligenciado el 23 de julio de 2025 se realizó "accesible en la inmediata presencia" de esta, conforme a la Regla de 4.4 de Procedimiento Civil. Ello, toda vez que aún bajo la propia versión del emplazador, la cual la Peticionaria niega por completo- el diligenciamiento descrito consistió, en esencia, en la dejación de los documentos en el portón de la residencia, a una distancia aproximadamente de quince (15) a veinte (20) pies del lugar donde supuestamente se encontraba la Peticionaria, sin entrega personal, sin acercamiento real y sin la interacción directa que exige el estándar estricto aplicable, Al sostener como valido dicho diligenciamiento, el Tribunal adoptó una interpretación indebidamente laxa del concepto de "inmediata presencia", con el efecto de privar a la peticionaria de una notificación efectiva y del debido proceso de ley, y de sostener determinaciones ulteriores sin jurisdicción personal válidamente adquirida.

B. Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Cabo Rojo, al excluir indebidamente prueba de impugnación esencial ofrecida por la Peticionaria durante la vista evidenciaría, consistente en su teléfono celular como objeto físico, mediante el cual se pretendía presentar mensajes de texto y fotografías contemporáneas que corroboraban su localización fuera de su residencia el 23 de julio de 2025, fecha del alegado diligenciamiento del emplazamiento. El Tribunal fundamentó su exclusión en que dicha evidencia no había sido "subida a SUMAC" con anterioridad, imponiendo así una carga procesal inexistente para este tipo de evidencia y restringiendo injustificadamente el derecho de la Peticionaria a impugnar y refutar la versión del emplazador. En particular, tratándose de prueba de impugnación su necesidad y pertinencia pueden surgir en el mismo acto del desfile de la prueba, precisamente para responder a lo que surge del testimonio adverso, por lo que exigir su pre- radicación como condición

---

[22] Véase Ent. Sum. TPI. Núm. 51.
[23] Véase Ent. Sum. TPI. Núm. 53.
[24] Véase Ent. Sum. TPI. Núm. 54.

para su admisión constituye una limitación irrazonable que menoscaba el debido proceso de ley y la búsqueda de la verdad en el proceso judicial.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491, hoy conocido como Ley de Recursos Extraordinarios. Véase también *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728 (2016). Aunque el *certiorari* se reconoce como un recurso discrecional la sensatez del juzgador se guía por unos límites. Es decir, la discreción judicial no es irrestricta y ha sido definida en nuestro ordenamiento jurídico como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC, supra*, pág. 729; *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

El primero de estos límites es la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Esta dispone en lo pertinente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en

casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superados los criterios de la Regla 52.1 de Procedimiento Civil, venimos llamados a ejercer nuestro criterio sujeto a lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### B. Emplazamiento

El emplazamiento es el mecanismo procesal por el cual se adquiere jurisdicción sobre la persona y se le notifica al demandado la existencia de una reclamación en su contra. *Bernier González v. Rodríguez Becerra,* 200 DPR 637, 645 (2008). El fin principal del emplazamiento es notificar al demandado de que se ha presentado un pleito en su contra y que tendrá derecho a ser oído y a defenderse si así lo cree necesario. *Rivera Báez v. Jaume Andújar*, 157 DPR 562, 576 (2002).

Los requisitos del emplazamiento tienen que cumplirse de manera estricta. *Íd.* Esta rigurosidad surge dado a que "el emplazamiento se mueve dentro del campo del Derecho Constitucional y más específicamente dentro del derecho del demandado a ser oído y notificado de cualquier reclamación en su contra". R. Hernández Colon, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6.ª ed. rev. San Juan, Ed. Lexis Nexis, 2017, pág. 257.

Según la Regla 4.3 (c) de Procedimiento Civil, 32 LPRA Ap. V., establece que el emplazamiento será diligenciado en un plazo de 120 días. En lo que respecta a las clases de emplazamiento las Reglas de Procedimiento Civil establece que se podrá realizar el emplazamiento mediante edicto o personalmente.

El emplazamiento personal tiene dos (2) modalidades. La Regla 4.4 de Procedimiento Civil, 32 LPRA Ap. V., expone que "[e]l emplazamiento la demanda se diligenciaran conjuntamente. Al entregar la copia de la demanda y del emplazamiento, *ya sea mediante su entrega física a la parte demandada o haciéndolas accesibles en su inmediata presencia"*. (Énfasis suplido). En torno a las citaciones, el cual puede ser aplicado analógicamente a los emplazamientos el Tribunal Supremo de Puerto Rico ha establecido que "[e]l diligenciamiento personal no significa entrega en la mano". *PPD v. Admor Gen. De Elecciones*, 111 DPR 199, 272 (1981). El dejar la citación en un hogar se cumple con el criterio de diligenciamiento personal. *Íd.*

**III.**

Luego de examinar detenidamente el expediente del presente caso, y conforme a la discreción que ostentamos para expedir un recurso de *certiorari* según lo establece la Regla 52.1 de Procedimiento Civil y los criterios expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, consideramos que no

estamos ante una situación que justifique nuestra intervención con el dictamen recurrido, conforme lo cual declinamos ejercer el recurso.

**IV.**

Por los fundamentos antes expuestos, se deniega el recurso de *certiorari* presentado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones