EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Vendrell López<br><br>Recurrida<br><br>v.<br><br>Autoridad de Energía Eléctrica<br><br>Peticionario | Certiorari<br><br>2017 TSPR 192<br><br>198 DPR _____ |

Número del Caso: CC-2016-900

Fecha: 1 de diciembre de 2017

Región Judicial de San Juan - Caguas

Abogada de la parte peticionaria:

Lcda. Rebecca Torres Ondina

Abogado de la parte recurrida:

Lcdo. Juan Piza Ramos

Materia: Sentencia del Tribunal con Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Vendrell López

    Recurrida

       v.                     CC-2016-900        *Certiorari*

Autoridad de Energía Eléctrica

    Peticionario

Sentencia

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

En el día de hoy, nos corresponde resolver si puede considerarse válida la notificación de una determinación administrativa, cuando el documento notificado ha sido devuelto por el correo postal por no ser reclamado (*unclaimed*) por la parte a la cual se dirige.

Adelantamos que -- a la luz de los hechos particulares del caso ante nos, así como el estado de derecho aplicable -- la notificación de una determinación administrativa que ha sido devuelta por el correo postal, por no ser reclamada (*unclaimed*) por la parte destinataria, será considerada válida

solo si: (1) se logra demostrar que la parte remitente realizó esfuerzos razonables para notificar el documento en cuestión y, además, (2) se acredita que el documento fue enviado a la *"dirección correcta"*; es decir, aquella en la cual, según el mejor entendimiento de la parte remitente, el destinatario recibe otras comunicaciones. Veamos.

## I.

El señor José Vendrell López ("el señor Vendrell López") es abonado de la Autoridad de Energía Eléctrica ("AEE") y, como tal, recibe servicio de energía eléctrica en cierto apartamento ubicado en el complejo residencial Interamericana Garden Apartments, en Trujillo Alto. Las facturas emitidas por la AEE en relación a dicha propiedad son enviadas al señor Vendrell López, y recibidas por éste, a la siguiente dirección postal: Interamericana Gdn. Apts A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422.

Tras una inspección realizada por la AEE en el contador del señor Vendrell López, se detectaron ciertas irregularidades,[1] por lo que el 4 de julio de 2015, la AEE le notificó a éste la querella administrativa núm. ICEE 1503196712. En la misma, se le informó al señor Vendrell López del uso indebido de energía eléctrica y, en consecuencia, la AEE reclamó un total adeudado de $13,514.70, por concepto de consumo no facturado, gastos administrativos y multa administrativa. La notificación de la querella incluyó, además, la siguiente advertencia:

---

[1] A saber, un resistor en la bobina, y, además, tanto el sello exterior como el interior del contador, rotos o alterados.

Dentro del término de 10 días laborables, a partir del recibo de esta notificación, deberá acudir y/o coordinar una cita con nuestra oficina para discutir los detalles de su caso. En dicha reunión puede estar acompañado de un abogado. Además, tiene derecho a solicitar por escrito ante este servidor [a saber, el Supervisor Principal de la AEE en la Región de Carolina,] una reconsideración de esta determinación con los fundamentos en que se basa la misma. Esta solicitud debe ser presentada a nuestra atención, dentro del término antes mencionado. (Énfasis en el original y suplido). *Véase* Apéndice de *Certiorari*, pág. 44.

El 7 de julio de 2015 la AEE le envió al señor Vendrell López la referida querella administrativa, **mediante correo certificado con acuse de recibo**, a la dirección postal según obraba en los sistemas de la AEE; entiéndase, Interamericana Gdn. Apts A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422. No obstante, esta comunicación fue devuelta por el Servicio Postal de los Estados Unidos como no reclamada (*unclaimed*).

Posteriormente, el 22 de julio de 2015, la AEE le cursó una segunda carta al señor Vendrell López, en la cual se hizo referencia a la primera carta cursada. Asimismo, se le advirtió lo siguiente:

Aunque no asistió, ni solicitó reconsideración, ni efectuó el pago de los gastos desglosados en comunicación anterior, se le orienta que tiene derecho a presentar una solicitud de revisión dentro de los próximos veinte (20) días de recibir esta notificación, ante la Secretaría de Procedimientos Adjudicativos de la AEE (apartado 363928, San Juan, PR 00936-3928). Esta solicitud de revisión ante Secretaría deberá estar acompañada con copia de esta carta. De acogerse a este recurso, la multa será impuesta según notificada.

Pasados los veinte días laborables de esta notificación y no haber radicado la solicitud de revisión o pagado el importe de $13,687.18[,] el servicio se suspenderá en cualquier momento. (Énfasis en el original y suplido). *Véase* Apéndice de *Certiorari*, pág. 48.

El 29 de julio de 2015, la mencionada carta fue enviada, **mediante correo certificado con acuse de recibo**, a la dirección postal del señor Vendrell López, a saber, Interamericana Gdn. Apts A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422. Sin embargo, nuevamente, dicha notificación fue devuelta a la AEE por el Servicio Postal, como no reclamada (*unclaimed*).

Así las cosas, el 15 de octubre de 2015 la AEE le cursó una factura al señor Vendrell López, en la cual incluyó el balance adeudado a raíz de la inspección realizada. **Dicha factura se envió a la misma dirección postal a la que fueron notificadas las dos cartas antes mencionadas**: Interamericana Gdn. Apts A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422. Esta vez, dicha factura fue recibida por el señor Vendrell López.

Una vez recibida la mencionada factura -- **la cual, como vimos, fue enviada a la misma dirección que las dos primeras comunicaciones**, -- el 22 de octubre de 2015, el señor Vendrell López se personó a las oficinas de la AEE, donde le entregaron a la mano copia de las comunicaciones fechadas el 4 de julio de 2015 y 22 de julio del mismo año. Asimismo, se le informó que la cantidad adeudada y reclamada en las referidas cartas era final y firme, pues el término para

solicitar revisión de las mismas había vencido, según se le había notificado. Ante tal situación, la representante de la AEE, Alexandra Pérez Ortiz (en adelante, "la representante de la AEE") sugirió la configuración de un plan de pago.

Subsiguientemente, el 29 de octubre de 2015, la representación legal del señor Vendrell López y la representante de la AEE se reunieron. En esta ocasión, la representante de la AEE discutió los pormenores de la querella administrativa, así como los hallazgos, el desglose de la deuda encontrada y las opciones a favor del señor Vendrell López.

Ante este panorama, el 3 de diciembre de 2015, el señor Vendrell López presentó ante la Secretaría de Procedimientos Administrativos de la AEE un escrito titulado *Urgente Segunda Solicitud de Vista y de No Paralización de Servicio*. Según alegó, a pesar de no incluir evidencia acreditativa a tales efectos, el 4 de noviembre del mismo año había incoado una solicitud de revisión ante la Secretaría, pero arguyó que la misma no había sido contestada.[2]

Evaluado el referido documento, el 20 de enero de 2016, la AEE emitió una *Resolución* mediante la cual desestimó la solicitud de revisión incoada por el señor Vendrell López. En síntesis, sustentó su determinación en que conforme a las comunicaciones que le fueron remitidas al señor Vendrell López, la revisión presentada se hizo fuera del término de

---

[2] Fue posteriormente, mediante facsímil cursado el 10 de diciembre de 2015, que el señor Vendrell López le notificó a la Secretaría de Procedimientos Administrativos de la AEE copia de una carta fechada el 4 de noviembre de 2015.

veinte (20) días para ello, según lo dispuesto en el Artículo B, Sección XVII del Reglamento Núm. 7982 de la AEE, *infra*.

Inconforme, el 10 de febrero de 2016 el señor Vendrell López presentó una revisión ante la Secretaría de Procedimientos Administrativos de la AEE en la cual alegó haber presentado una solicitud de revisión judicial el 4 de noviembre de 2015, la cual no fue atendida. En esta ocasión, por primera vez, se proveyó una declaración jurada suscrita por el representante legal del señor Vendrell López, en la cual expuso haber preparado y enviado la referida solicitud de revisión fechada el 4 de noviembre de 2015.

Debido a que la reconsideración no fue atendida dentro del término de quince (15) días dispuesto para ello, el señor Vendrell López presentó ante el Tribunal de Apelaciones un recurso de revisión judicial. En síntesis, alegó que la AEE erró al declararse sin jurisdicción para atender el recurso de revisión presentado por éste. El señor Vendrell López adujo que los términos para recurrir de las notificaciones enviadas por correo con acuse de recibo, relativas a la querella administrativa, habían comenzado a transcurrir cuando le fueron entregadas a la mano el 22 de octubre de 2015, al acudir a las oficinas de la AEE.

Así las cosas, el Tribunal de Apelaciones dictó una Sentencia mediante la cual revocó la *Resolución* emitida por la AEE. El foro apelativo intermedio interpretó que, dado a que las cartas enviadas por correo con acuse de recibo no

fueron reclamadas (*unclaimed*), las mismas se entendían como no notificadas y, en su consecuencia, determinó que la *Resolución* emitida el 22 de julio de 2015 carecía de eficacia. De este modo, el Tribunal de Apelaciones ordenó a la AEE a notificar correctamente la querella y, además, indicó que la agencia no podría suspender el servicio de energía eléctrica ni cobrar la suma de dinero exigida en la querella hasta que se cumpliera con el debido proceso de ley.

Inconforme con tal determinación, la AEE acude ante nos mediante un recurso de *certiorari*. En síntesis, plantea que el Tribunal de Apelaciones erró al declararse sin jurisdicción para atender la revisión judicial presentada por el señor Vendrell López, por entender el foro que no se cumplió con el debido proceso de ley ante el foro administrativo. Aduce la AEE que el envío de las dos comunicaciones por correo certificado con acuse de recibo, a la "*dirección correcta*" del señor Vendrell López, constituyó una notificación adecuada. Asimismo, la AEE señaló como error el hecho de que el foro apelativo intermedio no atendiera el asunto relativo a la no radicación del recurso de revisión el 4 de noviembre de 2015.

Por otro lado, el señor Vendrell López compareció ante nos mediante una *Moción en Cumplimiento de Orden* y, en síntesis, somete el caso "*a base del expediente*". Asimismo, expone que las cartas objeto del presente pleito no fueron recibidas, puesto que la AEE tenía las mismas en su poder.

Contando con el beneficio de las comparecencias de las partes, procedemos a resolver.

II.

*A. El debido proceso de ley*

Como es sabido, la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece, en lo aquí pertinente, que "*[n]inguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes*". Art. II, Sec. 7, Const. E.L.A., LPRA, Tomo I, ed. 2016, pág. 301. Por otro lado, y de forma muy similar, la Constitución de los Estados Unidos, en su Quinta Enmienda, dispone que "*[n]inguna persona […] será privad[a] de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley…*". Emda. V, Const. EE. UU., LPRA, Tomo I, ed. 2016, págs. 190-191. Además, la Enmienda Catorce de la Constitución federal establece que "*… ningún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes*". Emda. XIV, Const. EE. UU., LPRA, Tomo I, ed. 2016, pág. 208.

Anteriormente, este Tribunal ha establecido que el debido proceso de ley -- derecho fundamental -- "*encarna la esencia de nuestro sistema de justicia*". *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109, 113 (1996); *Amy*

*v. Adm. Deporte Hípico*, 116 DPR 414, 420 (1985). Y es que "*[s]u prédica comprendía elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado*". *López y otros v. Asoc. de Taxis de Cayey, supra; Amy v. Adm. Deporte Hípico, supra.*

Es decir, el debido proceso de ley se define como el "*derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo*". *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012); *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). *Véase* además *Rodríguez Rodríguez v. E.L.A.,* 130 DPR 562, 578 (1992) ("*[…]la cláusula del debido proceso de ley le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que en esencia sea justo y equitativo, que respete la dignidad de los individuos afectados*"). Así, pues, se ha reconocido una serie de garantías que conforman el debido proceso de ley, a saber: la concesión de una vista previa; **una notificación oportuna y adecuada**; el derecho a ser oído; el derecho a confrontarse con los testigos en su contra; a presentar prueba oral y escrita a su favor y, además, la presencia de un adjudicador imparcial. *López y otros v. Asoc. de Taxis de Cayey, supra*, a las págs. 113-114; *Henríquez v. Consejo Educación Superior,*

120 DPR, 194, 202 (1987); *Ortiz Cruz v. Junta Hípica*, 101 DPR 791, 795 (1973).

De igual forma, dado a que las agencias administrativas ejercen una función adjudicativa en nuestro País, al interferir con los intereses de libertad y propiedad de los individuos, la garantía a un debido proceso de ley se ha hecho extensiva a dichas instrumentalidades. *Véase Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010); *Almonte et al. v. Brito*, 156 DPR 475, 481 (2002); *López y otros v. Asoc. de Taxis de Cayey*, *supra*, a la pág. 113.

En este sentido, y en lo pertinente al caso que nos ocupa, nuestro ordenamiento jurídico reconoce que, en el plano administrativo, el debido proceso de ley garantiza el derecho a una **notificación oportuna**, la presentación de evidencia, a que la adjudicación sea justa e imparcial y, además, que la misma se base en el expediente del caso. *Véase* Sec. 3.1 de la *Ley de Procedimientos Administrativos Uniformes*, 3 LPRA sec. 2151. *Véase* además *Báez Díaz v. E.L.A.*, *supra*, a la pág. 624; *Álamo Romero v. Adm. Corrección*, 175 DPR 314, 329 (2009); *López y otros v. Asoc. de Taxis de Cayey*, *supra*, a las págs. 113-114.

B.   *Requisito de notificación*

Cónsono con lo anterior, este Tribunal ha establecido que la garantía del debido proceso de ley presupone una notificación que se caracterice como "*real y efectiva,*

*ajustada a los preceptos estatutarios aplicables"*. *Río Const. Corp. v. Mun. de Caguas*, 155 DPR 394, 412 (2001); *Jorge E. Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7-8 (2000); *Asoc. Residentes v. Montebello Dev. Corp.*, 138 DPR 412, 421. Específicamente, y en lo relacionado a la notificación de determinaciones administrativas, el profesor Demetrio Fernández Quiñones ha señalado lo siguiente:

> La notificación de la querella es requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo. Su incumplimiento violenta el derecho a ser oído, toda vez que forma parte y está ligada a él de manera indisoluble. A través de la notificación se le informa a la parte querellada de las alegaciones en su contra y se le concede oportunidad razonable para contestar y presentar su caso. Es un requisito elemental del debido proceso de ley. Son dos sus componentes: (1) [e]l derecho a conocer sus garantías, como lo es el derecho a la vista; y (2) [l]a notificación adecuada de la celebración de la vista y de las controversias que se dirimirán en ella. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 3ra Ed., Colombia, Forum, 2013, pág. 185.

En este sentido, una notificación se entenderá como eficaz en la medida en que la misma se haya hecho bien, por lo que necesariamente, ésta deberá ser enviada *"no a cualquier dirección, sino, obviamente, a la dirección correcta"*. *Ortiz v. A.R.Pe.*, 146 DPR 720, 723-724 (1998). Ahora bien, con el propósito de determinar lo que constituye una *"dirección correcta"*, es menester repasar algunos de nuestros pronunciamientos a tales efectos.

Dado a que este Tribunal no se ha expresado en torno a este asunto en el contexto de un procedimiento administrativo, resulta conveniente repasar la normativa aplicable a los casos civiles; específicamente, en el contexto del emplazamiento a partes demandadas. *Véase* 31 LPRA sec. 18.

Así pues, en *Rodríguez v. Nasrallah*, 118 DPR 93 (1986), ante una controversia relacionada a la validez de una notificación realizada mediante edicto, adoptamos el criterio federal sobre la "*dirección razonablemente calculada*", según pautada en *Evans v. Galloway*, 701 P.2d 659 (Idaho 1985), el cual exige que el envío por correo certificado con acuse de recibo de la copia de la demanda y la orden para emplazar por edicto se haga al lugar de la "*última dirección conocida*" de la parte demandada.[3] De este modo, establecimos que la parte que notifica mediante edicto debe cumplir con la norma de que la última residencia conocida esté "*razonablemente calculada, dentro de todas las circunstancias concurrentes, [para] darle aviso a la parte contraria*". *Íd.*, a la pág. 102.[4]

---

[3] *Véase* Regla 4.5 de las de Procedimiento Civil de 1979, 32 LPRA Ap. III, derogada y sustituida por la Regla 4.6 de las de Procedimiento Civil, 32 LPRA Ap. V, sec. 4.6 (la cual, en lo aquí pertinente, es esencial a la anterior Regla 4.5, *supra*, y dispone que la notificación habrá de realizarse a "*la última dirección física o postal conocida*" de la parte demandada).

[4] Específicamente*, véase Evans v. Galloway*, 701 P.2d 659, 661 (Idaho 1985):

Under these circumstances, we are inclined to follow those courts which have held that, for persons engaged in actionable conduct who subsequently move leaving no

Posteriormente, en *Rivera v. Jaume*, 157 DPR 562 (2002), reiteramos la mencionada norma. En esa ocasión, la controversia giró en torno a la notificación enviada por la parte demandante a un apartado postal, el cual a su vez constituía la única dirección conocida. La notificación en cuestión fue devuelta con la anotación de "*unclaimed*". Ante tales hechos, este Tribunal evaluó el efecto que tuvo el hecho de que se enviaran los documentos relacionados al emplazamiento mediante edictos a una dirección, pero los mismos fueran devueltos por el servicio postal a la parte demandante, por no haber sido reclamados por el destinatario.

Así las cosas, en aquel entonces determinamos que, en situaciones como las antes narradas, era deber del Tribunal de Primera Instancia inquirir sobre si la parte demandante conocía o estaba segura, según su mejor entendimiento, de que la dirección que proveyó le pertenecía, o le perteneció, a la parte demandada. *Íd.*, a las págs. 582-583. Ello, en aras de salvaguardar el debido proceso de ley.

Más adelante, en *R & G v. Sustache*, 163 DPR 491 (2004), nos enfrentamos con una controversia relacionada a la suficiencia de la notificación en un proceso de venta judicial. En particular, evaluamos si era

forwarding address by which their whereabouts may be determined, service of summons by publication in a newspaper of general circulation in the area, and a mailing of copies of the summons and complaint to that party's last known address is reasonably calculated under all the circumstances to apprise that party of the pendency of an action.

suficiente, con el fin de cumplir con las exigencias del debido proceso de ley, realizar una notificación por correo certificado con acuse de recibo a la dirección residencial donde el demandado fue emplazado, aun cuando la carta en cuestión fuese devuelta por el servicio postal de correo por insuficiencia en la dirección o por ser la dirección una desconocida. *Íd.*, a la pág. 492.

Allí, similar a como lo hicimos en las ocasiones antes mencionadas, pero en escenarios distintos, resolvimos -- mediante sentencia -- que la notificación en cuestión debe cumplir con las exigencias del debido proceso de ley. *Íd.*, a la pág. 500. Por ello, en aquellos casos de venta judicial, pautamos la siguiente norma:

> Cuando se envíe el aviso de venta judicial de acuerdo con la Regla 51.8(a), *supra*, a un deudor demandado que no ha comparecido al pleito, **la dirección a la que se le envíe tiene que estar razonablemente calculada, a la luz de las circunstancias particulares del caso,** para darle una notificación efectiva de la venta y de cualquier derecho o exención que lo cobije. **El promovente de la venta judicial deberá realizar los trámites necesarios, con cierto grado de esfuerzo, para procurar la dirección del deudor demandado al hacer la notificación. Ello no implica, sin embargo, que el promotor de la venta tenga que realizar esfuerzos extraordinarios.** (Énfasis suplido). *Íd.*, a la pág. 504.

Ahora bien, establecido el tratamiento que se le ha dado al asunto ante nuestra consideración en la jurisprudencia local, para una cabal comprensión del mismo, nos resulta apropiado señalar, brevemente, cuál ha

sido el acercamiento que en la esfera federal se le ha hecho a este tema. Particularmente, es importante repasar lo dispuesto por el Tribunal Supremo de los Estados Unidos en una de sus últimas decisiones en las que abordó un asunto similar al que aquí está en controversia.

En este sentido, conviene señalar que en *Jones v. Flowers*, 547 US 220 (2006), un caso que versaba sobre la notificación no reclamada (*unclaimed)* de un aviso de venta judicial, el Tribunal Supremo de los Estados Unidos, **en una fecha posterior a los pronunciamientos antes señalados**, resolvió que, para entender que una notificación se ha perfeccionado, el debido proceso de ley no requiere que la parte demandada, efectivamente, reciba la notificación. *Íd.,* a la pág. 226. Por el contrario, dicho Foro expresó que, según ha resuelto anteriormente, el debido proceso de ley requiere que se provea una notificación razonablemente calculada, bajo todas las circunstancias, para informar a las partes interesadas de la acción incoada en su contra; ello, de modo que se le pueda conceder una oportunidad para presentar sus objeciones, en caso de haberlas. *Íd.* [5] Asimismo, se resolvió que la notificación requerida variará según las circunstancias y condiciones de cada

---

[5] *Jones v. Flowers*, 547 US 220, 226 (2006), citando con aprobación a *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306, 314 (1950) ("*Rather, we have stated that due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'*").

caso. *Íd.*, a la pág. 227.[6] En esa dirección, señaló que la devolución de la carta certificada, marcada como no reclamada (*unclaimed*), podía significar una de las siguientes opciones: que la parte demandada residía en la dirección a la cual le fue cursada la correspondencia, pero no estaba en el hogar cuando el cartero llegó, y posteriormente no acudió al correo postal a reclamar la misma; o, en la alternativa, que la parte demandada no vivía en la dirección a la cual le fue enviada la correspondencia.[7]

Sobre este particular, resulta menester destacar que en el precitado caso la controversia ante el Tribunal Supremo de los Estados Unidos, así como los intereses envueltos, eran unos muy distintos a los del presente. Y es que en *Jones v. Flowers*, el interés protegido era uno de mayor envergadura, pues se trataba del derecho fundamental a la propiedad de una persona. No obstante, en el caso que nos ocupa, la controversia versa sobre la suspensión de un servicio brindado por el Estado a una persona que, tras intencionalmente incumplir con las obligaciones impuestas en ley para disfrutar del mismo, se rehúsa a acatar el procedimiento administrativo

---

[6] *Jones v. Flowers, supra,* a la pág. 227, citando con aprobación a *Walker v. City of Hutchinson*, 352 US 112, 115 (1956) ("*… we have explained that the 'notice required will vary with circumstances and conditions.'*").

[7] *Véase Jones v. Flowers, supra,* a la pág. 234. ("*The return of the certified letter marked 'unclaimed' meant either that Jones still lived at 717 North Bryan Street, but was not home when the postman called and did not retrieve the letter at the post office, or that Jones no longer resided at that address.*").

dispuesto para atender este tipo de asunto, previo a la cesación del servicio en cuestión.

En fin, extrapolando la luz de la normativa antes expuesta al contexto de las determinaciones administrativas, podemos colegir que cuando una notificación enviada por correo certificado es devuelta por el correo postal, se requiere que la parte que intenta notificar realice esfuerzos adicionales razonables para informar al demandado de la causa de acción incoada en su contra. Ahora bien, cuando, realizados esos esfuerzos, la notificación es enviada por correo certificado y es devuelta por el servicio postal sin haber sido reclamada ("*unclaimed*") por el destinatario -- y como consecuencia de ello, surge un reclamo de si esa notificación es válida o no, -- lo requerido por nuestras decisiones previas es que el tribunal se cerciore de que, efectivamente, la dirección que se tenía por la parte promovente y que fue provista al tribunal es la que le pertenecía a la parte promovida (entiéndase, era la "*dirección correcta*"), por lo que ésta debió haber recibido las notificaciones y quedar enterada de su contenido. *Véase Rivera v. Jaume*, *supra*, a la pág. 583.

Es, pues, ante tales circunstancias que una parte promovente deberá acreditar que, según su mejor conocimiento, sabía y estaba segura de que la dirección que utilizó para efectuar la notificación pertenecía o

alguna vez perteneció a la parte promovida. *Véase Rivera v. Jaume*, *supra*, a la pág. 583.

En ese análisis, el Tribunal debe tener presente que el hecho de que una carta enviada por correo certificado con acuse de recibo sea devuelta por no haber sido reclamada por el destinatario, se puede deber a una de dos razones: (1) que el destinatario en efecto recibió el aviso de disponibilidad de la correspondencia, pero optó por hacer caso omiso de la notificación; o, (2) que el destinatario nunca recibió la correspondencia enviada, ya sea porque no reside o no recibe la correspondencia a esa dirección. *Véase Jones v. Flowers*, *supra*, a la pág. 234.

Dicho de otro modo, la notificación de una determinación administrativa que ha sido devuelta por el correo postal, por no ser reclamada (*unclaimed*) por la parte destinataria, será considerada válida solo si: (1) se logra demostrar que la parte remitente realizó esfuerzos razonables para notificar el documento en cuestión y, además, (2) se acredita que el documento fue enviado a la "*dirección correcta*"; es decir, aquella en la cual, según el mejor entendimiento de la parte remitente, el destinatario recibe otras comunicaciones.

### III.

Por otra parte, el *Reglamento de Términos y Condiciones Generales para el Suministro de Energía Eléctrica*, Núm. 7982 de 14 de enero de 2011, según enmendado (en adelante, "*Reglamento Núm. 7982*"),

establece cuál es el proceso que habrá de seguirse en aquellas instancias en las que la AEE presente una querella administrativa contra alguno de sus abonados.

En lo aquí pertinente, el Artículo XI del referido reglamento le concede a la AEE la autoridad para investigar aquellas situaciones relacionadas al uso indebido de la energía eléctrica:

> Cuando se detecte una situación de uso indebido, la Autoridad [de Energía Eléctrica] puede denunciar la misma ante las autoridades pertinentes. El cliente o usuario o aquella otra persona natural o jurídica que se haya aprovechado de energía eléctrica no medida o no facturada[,] está obligado a pagar los gastos de investigación, de eliminar la condición detectada y pagar cualquier multa que le sea impuesta. El cliente o cualquier usuario o usuario no autorizado que se haya aprovechado indebidamente del servicio es responsable de pagar a la Autoridad [de Energía Eléctrica] el importe del estimado que ésta haga de la energía eléctrica dejada de registrar por el mediador o contador (metro) y que no se facturó. Sección XI, Artículo A, Reglamento Núm. 7982.

Asimismo, una vez se realiza una investigación relacionada al uso indebido de energía, de conformidad al precitado artículo, el Gerente de la oficina comercial de la AEE queda autorizado a "*presentar una querella contra el cliente, usuario o usuario no autorizado*". Sección XII, Artículo B, Reglamento Núm. 7982.

Una vez la querella en cuestión es notificada al cliente, usuario o usuario no autorizado, éste puede presentar una solicitud de reconsideración, conforme el

procedimiento establecido en el referido cuerpo reglamentario. El mismo establece lo siguiente:

> La parte adversamente afectada por una determinación de la Autoridad [de Energía Eléctrica] basada en las disposiciones de este Reglamento, excepto aquellas relacionadas con la objeción de cargos facturados, las cuales se rigen por lo dispuesto en la Sección XIII de este Reglamento, puede solicitar una reconsideración de la misma, en el término de diez (10) días, **a partir de la fecha en que se le notificó**. Dicha solicitud tiene que presentarse por escrito, ante el funcionario que emitió la determinación sobre la cual se solicita reconsideración y exponer los fundamentos en que se basa la misma. Sección XVII, Artículo A, Reglamento Núm. 7982.

En aquellas circunstancias en las que no se solicite una reconsideración y la querella verse sobre el uso indebido de energía, la AEE puede suspender el servicio de la misma, tras la correspondiente notificación en la que se advierta el derecho a revisión que le cobija al cliente, usuario o usuario no autorizado. *Véase* Sección XI del Reglamento Núm. 7982. Cónsono con lo anterior, el procedimiento para suspender el servicio de energía es el siguiente:

> Si el cliente no paga su factura y no sigue el procedimiento para objetar los cargos en el término dispuesto en la Sección XII de este Reglamento, la Autoridad [de Energía Eléctrica] puede suspenderle el servicio por falta de pago. También, puede suspenderle el servicio por cualquier violación a las disposiciones establecidas por las leyes, reglamentos, normas, manuales, códigos, patrones o comunicados técnicos vigentes. En este último caso, la Autoridad [de Energía Eléctrica] le notifica por escrito al cliente en qué

consiste la violación y si la misma requiere acción del cliente para eliminar o corregir una situación existente, le concede un término no menor de veinte (20) días para eliminar o corregir la situación, excepto cuando exista riesgo de daño inminente a la vida o propiedad, en cuyo caso, aplica lo dispuesto en el Artículo D de esta Sección, o cuando se trate de una situación de uso indebido, en cuyo caso aplican las disposiciones de la Sección XI de este Reglamento. Sección XIV, Artículo A, Reglamento Núm. 7982.

Es, pues, a la luz de la normativa antes expuesta, que procedemos a atender las controversias ante nuestra consideración.

IV.

Según se desprende del expediente ante nos, el 7 de julio de 2015 la AEE le notificó al señor Vendrell López la querella administrativa núm. ICEE 1503196712, la cual fue presentada en su contra por alegado uso indebido de energía eléctrica. Ello, tras realizar una inspección del contralor utilizado por el señor Vendrell López. Esta notificación incluyó las advertencias relativas al procedimiento administrativo para solicitar reconsideración y los términos para ello. Dicha notificación se realizó mediante correo certificado con acuse de recibo, a la dirección postal que obraba en el expediente de la AEE, a saber: Interamericana Gdn. Apt A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422. Sin embargo, la referida comunicación fue devuelta por el servicio postal como no reclamada por su destinatario (*unclaimed*).

Así las cosas, el 29 de julio de 2015 la AEE le cursó al señor Vendrell López una segunda carta. En la misma, no solo se hizo referencia a la primera carta, sino que también se incluyeron las advertencias de rigor antes mencionadas y, además, se le advirtió que el servicio de energía eléctrica sería suspendido en cualquier momento, luego de transcurrido el término para solicitar una revisión de la determinación administrativa. Esta segunda carta, al igual que la primera, fue enviada a la dirección que obraba en el expediente de la AEE y también fue notificada por correo certificado con acuse de recibo a la dirección del señor Vendrell López: Interamericana Gdn. Apt A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422. Una vez más, la carta fue devuelta como no reclamada.

Como se puede apreciar, sin duda alguna, en el presente caso podemos colegir que la AEE realizó las gestiones a su alcance para cumplir con el debido proceso de ley del señor Vendrell López, pues en dos (2) ocasiones distintas intentó notificar a éste de los señalamientos en su contra. En este sentido, somos del criterio que la AEE cumplió con el deber, según requerido por el primero de los criterios jurisprudenciales antes señalados, de realizar esfuerzos adicionales razonables para informarle al señor Vendrell López de la reclamación en su contra. A tales efectos, la entidad no se cruzó de brazos, sino que optó por cursarle una segunda carta a la dirección en cuestión.

Por si fuera poco, y cónsono con el segundo de los criterios jurisprudenciales esbozados anteriormente, la AEE logró acreditar que la dirección que utilizó para efectuar las dos notificaciones antes mencionadas pertenecía o alguna vez perteneció al señor Vendrell López. Ello, toda vez que el 15 de octubre de 2015, la AEE le cursó una factura a éste en la cual incluyó el balance adeudado a raíz de la inspección de su contador, y la cual sí fue recibida. **Dicha factura se envió a la dirección que obraba en el expediente de la AEE, la cual, a su vez, fue la misma dirección postal a la que fueron notificadas las dos cartas cursadas y que fueron devueltas como *unclaimed*.** Curiosamente, siete (7) días después de recibir dicha factura -- **la cual, como mencionamos, fue enviada a la misma dirección a la que fueron cursadas las notificaciones anteriores** -- el señor Vendrell López se personó a las oficinas de la AEE para cuestionar la cantidad reclamada.

Distinto a *Rivera v. Jaume*, *supra*, el expediente ante nuestra consideración contiene evidencia que corrobora que las comunicaciones del 7 de julio y 29 de julio de 2015, respectivamente, fueron enviadas a la dirección postal correcta en la que el señor Vendrell López suele recibir las facturas mensuales de consumo de energía eléctrica, a saber: Interamericana Gdn. Apts A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422. De hecho, el señor Vendrell López no cuestiona haber recibido la factura de consumo de energía eléctrica en la referida dirección, por lo que

entendemos que éste optó por hacer caso omiso a las primeras dos (2) notificaciones[8].

Ante tal cuadro fáctico, no albergamos duda de que la AEE tenía motivos suficientes para creer, dentro de su mejor conocimiento, que la dirección Interamericana Gdn. Apts A18 Calle 20 Apt. 3A Trujillo Alto PR 00976-7422 era una dirección correcta y que pertenecía al señor Vendrell López. Ello satisface los criterios que la jurisprudencia ha establecido para los casos en que la correspondencia no es reclamada por su destinatario.

---

[8] Es menester señalar que, en el presente caso, tal y como esbozamos anteriormente, sucedió algo muy distinto a lo ocurrido en *Jones v. Flowers*, *supra.* Allí, el Tribunal Supremo federal resolvió que el Estado debió haber realizado esfuerzos adicionales para notificarle al señor Jones **en cuanto a su incumplimiento tributario y la eventual facultad del Estado de vender la propiedad**, luego de haber sido devueltas dos notificaciones cursadas a éste por correo certificado. En el caso de autos, la Autoridad de Energía Eléctrica (A.E.E.) envió tres comunicaciones en total. Las primeras dos (2), las cuales versan sobre el asunto en controversia, fueron notificaciones por correo certificado con acuse de recibo, dirigidas ambas al señor José Vendrell López, a la dirección postal que obraba en los expedientes de la entidad, y no fueron reclamadas por éste. No obstante, **la tercera comunicación -- a saber, el envío de una factura por servicio eléctrico, -- enviada por correo regular y dirigida al señor Vendrell a la misma dirección en cuestión, sí fue recibida por éste.**

En este sentido, y contrario a lo acaecido en *Jones*, nos parece lógico concluir que, tratándose de la misma dirección que obraba en el expediente de la A.E.E. y en la cual el señor Vendrell había recibido y recibió sus facturas de energía eléctrica sin problema alguno, aquí sí hubo constancia de que la dirección utilizada para enviar la notificación por correo certificado era correcta.

Además de lo anterior, nos preocupa sobremanera el impacto que podría tener el adoptar, automáticamente, **y sin distinguir los hechos de *Jones* del caso ante nuestra consideración**, las *sugerencias* esbozadas por el Tribunal Supremo en el referido caso. Y es que, de irreflexivamente adoptar, sin más, esa postura, en cuanto a exigir una segunda notificación por correo regular, parecería requerir que, en efecto, **siempre** se realice una segunda notificación **menos rigurosa** a la primera.

Siendo ello así, concluimos que la AEE actuó correctamente al declararse sin jurisdicción debido a que el recurso de revisión presentado por el señor Vendrell López se presentó tardíamente. El error señalado fue cometido.

Resuelto lo anterior, por tratarse de un asunto de índole jurisdiccional, no hace falta que atendamos los demás errores presentados.

V.

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se revoca la Sentencia del Tribunal de Apelaciones.

Notifíquese inmediatamente por fax, teléfono, correo electrónico y por la vía ordinaria.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo de Puerto Rico. La Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada señora Pabón Charneco concurren sin Opinión escrita. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión Disidente. El Juez Asociado señor Estrella Martínez disiente y hace constar la siguiente expresión:

Nuevamente, este Tribunal encara una situación que nos ilustra "el peligro de que las agencias administrativas se beneficien o lesionen derechos de ciudadanos por motivo de realizar notificaciones defectuosas . . .". García Sierra v. Adm. Corrección, 192 DPR 936, 936 (Estrella Martínez, Op. Disidente) (2015). Revocar la determinación del Tribunal de Apelaciones en este caso, no solo vulnera el derecho del Sr. José Vendrell López (señor Vendrell López o recurrido) "a solicitar revisión ante la Rama

Judicial", sino que también despoja al recurrido de las garantías mínimas de ser escuchado y defenderse de las alegaciones contenidas en la querella administrativa en su contra. Íd.

El debido proceso de ley y las protecciones que enmarca su vertiente procesal es una de las "fórmulas elásticas de justicia sustancial que no es susceptible de definición genérica. No es una norma invariable que pueda aplicarse por su propia virtualidad independientemente de las circunstancias [y condiciones] que medien en el caso". Santiago Mercado v. Jones, 74 DPR 617, 621-622 (1953). Sin embargo, esta flexibilidad no es ilimitada, sino que cede cuando resulta contradictoria con la protección constitucional que prohíbe que se prive a una persona de su libertad o propiedad sin **notificación** u **oportunidad de ser escuchado** y de defenderse. Véase Fuentes v. S.L.G. Badillo, 160 DPR 444, 451 (*citando a* Rivera Rodríguez v. Lee Stowell, 133 DPR 889-990 (1993); Lunar v. Edmondson Oil Co., 457 U.S. 922 (1982); Mullane v. Central Hanover Tr. Co., 339 U.S. 306 (1950)).

A tono con tales garantías básicas, hemos reconocido que la norma general es que la notificación se haga vía "citación real y efectiva, ajustada a los preceptos estatutarios aplicables". Asoc. De Residentes Parque Montebello v. Montebello Dev. Corp., 138 DPR 412, 421 (1995). Si bien la notificación constructiva o por inferencias no contradicen por sí solas el debido proceso de ley, su utilización es a manera de excepción y únicamente ante circunstancias extraordinarias. Íd. Adviértase que siendo la notificación "un eslabón de tanta envergadura en el debido proceso de ley [no puede] tom[arse] . . . una configuración laxa *basada en una mera conclusión especulativa de que se tenía conocimiento de la decisión administrativa"*. Íd. El análisis y solución del caso ante nos merecía una rigurosidad similar, pues si bien el debido proceso se acomoda con elasticidad a un balance de intereses, el mismo no deja de ser "debido" a, y para proteger al ser humano.

En Jones v. Flowers, 547 U.S. 220 (2006), la Corte Suprema de los Estados Unidos reiteró que, a pesar de que el debido proceso de ley no requiere, como cuestión de hecho, que la persona interesada reciba la notificación del proceso administrativo en

su contra, la forma de notificación que use el Estado debe estar razonablemente diseñada para informar al afectado o afectada del proceso. Íd., pág. 226. Únicamente después de una notificación que satisfaga este parámetro mínimo de razonabilidad puede el Estado afectar los intereses libertarios o propietarios del individuo de manera final y firme. Ahora bien, el foro supremo federal resolvió que cuando **el Estado tuviere información que indique que su intento de notificar fue inefectivo, tiene la obligación de proceder tal y como lo haría "una persona realmente deseosa de informar"** al individuo que está en riesgo de perder su propiedad. De esa forma, concluyó que le correspondía al remitente de la notificación tomar **pasos adicionales para informar al destinatario.** Ello, toda vez que la información recibida en ese caso, igual que en la situación fáctica ante nos, confirmaba a la agencia que el destinatario no recibió la notificación y, por tanto, desconocía del procedimiento en curso y su derecho a comparecer para defender sus intereses. La manera en que la Mayoría dispone del presente recurso no solo es contraria al precedente de Jones v. Flowers, supra, sino que aplica el precedente a la inversa. Sin más, la Mayoría infiere que cuando la agencia recibe devuelta la notificación enviada al individuo, por esta no haber sido reclamada, implica **que el destinatario la ignoró intencionalmente.** Sentencia, en la pág. 23.

Preocupa sobremanera que se reduzca el asunto ante nos a que la "controversia versa sobre la suspensión de un servicio brindado por el Estado a una persona que, **tras intencionalmente incumplir con las obligaciones impuestas en ley para disfrutar del mismo, se rehúsa a acatar el procedimiento administrativo dispuesto para atender este tipo de asunto. . .".** Sentencia, en la pág. 16 (énfasis suplido). Todo ello sin que mediare una notificación adecuada conforme a los criterios mínimos constitucionales y menos una oportunidad para ser escuchado.

Tal proceder confunde las obligaciones del recurrido con las del Estado, y olvida que es el último el que viene obligado a brindar un proceso debido al primero, y no a la inversa. Validar la

utilización por segunda ocasión del mismo método o forma de notificación que la agencia conoce que fracasó la primera ocasión es precisamente el tipo de "configuración laxa **basada en una mera conclusión especulativa de que se tenía conocimiento de la [querella] [y] decisión administrativa**". Asoc. De Residentes Parque Montebello v. Montebello Dev. Corp., 138 DPR 412, 421 (1995) (énfasis suplido).

Por las razones previamente esbozadas, respetuosamente disiento de la Mayoría de este Tribunal.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


José Vendrell López

     Recurrido

        v.


Autoridad de Energía
Eléctrica y otros

     Peticionarios
                    CC-2016-0900       *Certiorari*


Opinión disidente emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

¿Es adecuada la notificación de una determinación administrativa adversa cuando el correo postal la devuelve por no ser reclamada (*unclaimed*)? Luego de un análisis concienzudo del derecho aplicable, considero que -en un caso como este- el Estado no puede cruzarse de brazos si conoce que la notificación de la decisión adversa y del proceso para impugnarla se devuelve sin que se haya recibido. En estas circunstancias, el debido proceso de ley exige que el Estado tome medidas razonables adicionales para notificar esa determinación. Como la Mayoría otorga un peso desproporcional a si la notificación se hizo a la "dirección correcta" y le niega a la parte afectada el derecho a cuestionar la

decisión administrativa, disiento rotundamente del proceder mayoritario.

I

A. Debido proceso de ley

Analizar si una determinada actuación gubernamental satisface el debido proceso de ley típicamente requiere examinar el alcance de esa garantía en ambas constituciones. A nivel federal, la Quinta Enmienda de la Constitución de Estados Unidos establece que nadie será privado de su vida, libertad o propiedad sin el debido proceso de ley. Const. EE. UU. Enmda. V. De igual forma, la Sección 7 del Artículo II de la Constitución de Puerto Rico establece que "[n]inguna persona será privada de su libertad o propiedad sin un debido proceso de ley". Const. PR, Art. II, Sec. 7, LPRA, Tomo 1.

En su vertiente procesal, el debido proceso de ley procura el "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". Marrero Caratini v. Rodríguez Rodríguez, 138 DPR 215, 220 (1995). Las garantías y consideraciones del debido proceso de ley se activan cuando el Estado afecta negativamente un interés propietario o libertario protegido constitucionalmente. Una vez se reconoce el interés, el próximo paso consiste en establecer cuáles son las pautas mínimas que el Estado debe proveer. Rodríguez Rodríguez v. ELA, 130 DPR 562, 578 (1992). Por consiguiente, la naturaleza de estas garantías

procesales dependerá de un enfoque "circunstancial y pragmátic[o]". Domínguez Talavera v. Tribunal Superior, 102 DPR 423, 428 (1974).

Al interpretar el alcance del debido proceso de ley, el Tribunal Supremo de Estados Unidos determinó que uno de sus elementos fundamentales es la notificación, pues apercibe a las partes de la actuación gubernamental y les provee una oportunidad de presentar sus objeciones. Mullane v. Central Hanover Bank & Trust Co., 339 US 306 (1950). Ahora bien, no se exige un aviso real (actual notice), sino "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections". Íd., pág. 314. No obstante, la notificación tampoco puede ser un "mero gesto", sino que su razonabilidad y constitucionalidad dependerá de la certeza con la cual se informa a los afectados. Íd., pág. 315.[9]

Por otro lado, este Tribunal ha resaltado la transcendencia del requisito de notificación adecuada en muchísimos casos. En Asoc. Residentes v. Montebello Dev. Corp., 138 DPR 412, 421 (1995), por ejemplo, señalamos que "el debido proceso de ley requiere, como regla general, la notificación o citación real y efectiva, ajustada a los preceptos estatutarios aplicables". De igual modo, en Molini

---

[9] Véase, también, González-González v. U.S., 257 F.3d 31, 36 (1er Cir. 2001) ("[b]ecause due process is an infinitely flexible concept there is no infallible test for determining the adequacy of notice in any particular situation. The touchstone is reasonableness: the government must afford notice sensibly calculated to inform the interested party of the contemplated forfeiture and to offer him a fair chance to present his claim of entitlement".).

Gronau v. Corp. P.R. Dif. Púb., 179 DPR 674, 686 (2010), amparándonos en Comisión Ciudadanos v. G.P. Real Property, 173 DPR 998 (2008), resolvimos "que se incumple con las exigencias del debido proceso de ley cuando no se notifica adecuadamente una determinación administrativa a una parte afectada por ella". Así también, en Picorelli López v. Depto. de Hacienda, 179 DPR 720, 736 (2010), este Tribunal reiteró de forma unánime este precepto constitucional al concluir que "constituye un requisito indefectible la adecuada notificación de cualquier determinación de una agencia que afecte los intereses propietarios de un ciudadano".

B. Jurisprudencia sobre correo certificado

La controversia en este caso es si el Estado, a tenor con el debido proceso de ley, notifica adecuadamente una determinación adversa si la única notificación que se envió fue devuelta por el correo postal porque no se reclamó. La Mayoría entiende que sí y utiliza principalmente tres casos para apoyar su postura. Por mi parte, considero que una lectura contextualizada y armoniosa de estos casos apoya la postura contraria: si una notificación que se envía por correo certificado se devuelve sin reclamar, de modo que la parte no fue advertida, el Estado está obligado a tomar medidas adicionales razonables.

En Rivera v. Jaume, 157 DPR 562 (2002), la Sra. Ana N. Jaume Andújar presentó una demanda de filiación contra el Sr. Guillermo Rivera Báez, quien vivía en el Estado de Nueva

York. Por esta razón, el emplazamiento se hizo por edicto. Además, se enviaron los documentos pertinentes por correo certificado a su dirección en Nueva York. No obstante, la correspondencia no fue reclamada (*unclaimed*) por el señor Rivera Báez. A pesar de lo anterior, el foro de instancia dictó sentencia en rebeldía.

Años después el señor Rivera Báez presentó una demanda sobre impugnación de paternidad. Sostuvo que nunca recibió la notificación del procedimiento instado en su contra. El tribunal de instancia desestimó sumariamente la acción pues entendió que el señor Rivera Báez fue emplazado conforme a derecho. El foro apelativo intermedio confirmó el dictamen recurrido.

Este Tribunal expidió el recurso. Luego de atender varios de los planteamientos del señor Rivera Báez, expresamos que no podía ignorarse que la notificación se devolvió al correo postal porque no se reclamó. Íd., pág. 578. Destacamos que esa información le constaba al tribunal de instancia cuando emitió la sentencia y que esa realidad no podía tomarse livianamente por la importancia que tiene el emplazamiento para el cumplimiento con el debido proceso de ley. Íd., pág. 579. A su vez, reiteramos la norma de Mullane v. Central Hanover Bank & Trust Co., supra, a los efectos de que el debido proceso de ley no requiere que el demandado reciba físicamente la notificación, sino que "el método que se utilice razonablemente informe al demandado sobre la pendencia de una reclamación en su contra". Íd. págs. 579-580.

Por otro lado, también discutimos las implicaciones de que el servicio postal devuelva una notificación sin que fuera reclamada. Por ejemplo, citamos un caso que señaló que cuando la notificación se devuelve sin reclamarse no se satisfacen los requisitos de notificación. Esto, pues, a diferencia de una notificación que es rechazada (*refused*), cuando es devuelta sin reclamarse no significa que el demandado deliberadamente evitó la notificación. Íd., pág. 581; véase Kucher v. Fisher, 167 F.R.D. 397, 398 (1996). Asimismo, otro caso citado determinó que una notificación devuelta no reclamada podría significar, entre otras cosas, que la parte proveyó una dirección incorrecta. Rivera v. Jaume, supra, págs. 581-582; véase Pittman v. Trenton Energy Corp., 842 F.Supp. 918, 922 (Miss. 1994). Por lo tanto, señalamos que únicamente en circunstancias extraordinarias los tribunales federales han sostenido que es adecuada una notificación devuelta por el servicio postal. Entre ellos, un caso donde se realizó una vista evidenciaria y se determinó "que el demandado tenía conocimiento de la reclamación en su contra y que, en efecto, había rehusado recibir el emplazamiento". Rivera v. Jaume, supra, pág. 582; véase Danz v. Lockhart, 967 P.2d 1075 (Idaho 1998).

Al resolver el caso, este Tribunal concluyó que el foro primario "debió, cuando menos, inquirir sobre si efectivamente la señora Jaime conocía y estaba segura, en su mejor conocimiento, de que la dirección que le proveyó al tribunal pertenecía o alguna vez perteneció al demandado". Íd., pág. 583. Es decir, como la notificación se devolvió,

el tribunal no podía conformarse con la información ofrecida por la demandante. En consecuencia, determinó que los foros inferiores erraron al desestimar sumariamente la demanda de impugnación de paternidad del señor Rivera Báez.

Por otro lado, en R & G v. Sustache, 163 DPR 491 (2004), este Tribunal emitió una Sentencia en un caso sobre emplazamiento y venta judicial. En resumen, el Tribunal de Primera Instancia notificó la sentencia en rebeldía a la misma dirección donde emplazaron a los demandados, pero la notificación se devolvió por el servicio postal porque la dirección era insuficiente (insufficient address). Posteriormente, se notificó un aviso o edicto de subasta a esa misma dirección. El Sr. Francisco Sustache Rivera, uno de los demandados, solicitó la nulidad de la venta judicial celebrada porque no se notificó a la última dirección conocida. Alegó que la parte demandante conocía que su dirección postal era otra.

En primer lugar, expresamos que "el debido proceso de ley no es una garantía estática e inmutable, sino todo lo contrario. Varía y se conforma a las nuevas situaciones que confronta, ampliando de esta manera su esfera de influencia". Íd., pág. 501. Para determinar el efecto que debe tener que una notificación se devuelva por el servicio postal citamos varios casos estatales. En uno de esos casos citados, Prisco v. County of Greene, 734 N.Y.S.2d 280 (A.D. 3 Dept. 2001), la notificación de la venta judicial se devolvió porque no se reclamó. Discutiendo sus implicaciones expresamos que "[e]l hecho de que la notificación enviada

por correo hubiese sido devuelta por el servicio postal, debió haber alertado a la agencia de la posibilidad de que no estuviere cumpliendo con los requisitos constitucionales del debido proceso de ley". Íd., pág. 503. En atención a los hechos particulares del caso, resolvimos que en casos de venta judicial donde la notificación sea devuelta por insuficiencia de la dirección, deberá enviarse la correspondencia a otra dirección que conste en el expediente. Íd., pág. 504.

Finalmente, el caso más relevante para la controversia que tenemos ante nosotros es Jones v. Flowers, 547 US 220 (2006), resuelto por el Tribunal Supremo de los Estados Unidos. El Sr. Gary Jones era dueño de una casa, pero no pagó los impuestos sobre la propiedad. Consecuentemente, el Comisionado de las Tierras del Estado de Arkansas envió por correo certificado una carta a la dirección de la propiedad para informarle al señor Jones del incumplimiento tributario y del derecho del Estado de vender la propiedad luego de dos años. No obstante, la carta se devolvió al correo postal porque no se reclamó. Dos años más tarde, el Comisionado publicó un aviso de venta pública en el periódico local, al que la Sra. Linda Flowers respondió con una oferta. En un nuevo intento de informar al señor Jones que su propiedad sería vendida si no pagaba sus impuestos, el Comisionado envió un segundo aviso por correo certificado al señor Jones a la dirección de la propiedad. Una vez más, el aviso se devolvió porque no se reclamó. Consecuentemente, la señora Flowers compró la casa.

Tan pronto se enteró de la compraventa, el señor Jones presentó una demanda contra el Comisionado y la señora Flowers. Argumentó que el Estado no avisó adecuadamente la confiscación, en violación a su debido proceso de ley. Los demandados, por su parte, argumentaron que las dos cartas enviadas por correo certificado al señor Jones constituyeron una notificación adecuada, conforme con el debido proceso de ley.

El Tribunal Supremo de Estados Unidos acogió la postura del señor Jones y resolvió que "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so". Íd., pág. 225. El Tribunal enfatizó: "We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed". Íd., pág. 229. El Tribunal reconoció que, de ordinario, la evaluación de si una notificación es constitucionalmente suficiente se hace antes de la notificación (*ex ante*). No obstante, aclaró que "if a feature of the State's chosen procedure is that it promptly provides additional information to the government about the effectiveness of notice, it does not contravene the *ex ante* principle to consider what the government does with that information in assessing the adequacy of the chosen procedure". Íd., pág. 231.

Más adelante, el Tribunal señaló que el Estado de Arkansas, una vez se enteró que el señor Jones no recibió la notificación, debió tomar medidas razonables adicionales. En su análisis de cuáles medidas estaban disponibles, el Tribunal concluyó:

> We think there were several reasonable steps the State could have taken. **What steps are reasonable in response to new information depends upon what the new information reveals.** The return of the certified letter marked **"unclaimed"** meant either that Jones still lived at 717 North Bryan Street, but was not home when the postman called and did not retrieve the letter at the post office, or that Jones no longer resided at that address. **One reasonable step primarily addressed to the former possibility would be for the State to resend the notice by <u>regular mail</u>, so that a signature was not required.** The Commissioner says that use of certified mail makes actual notice more likely, because requiring the recipient's signature protects against misdelivery. But that is only true, of course, when someone is home to sign for the letter, or to inform the mail carrier that he has arrived at the wrong address. Otherwise, "[c]ertified mail is dispatched and handled in transit as ordinary mail," and **the use of <u>certified mail</u> might make actual notice less likely** in some cases—the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time. **Following up with regular mail might also increase the chances of actual notice to Jones if—as it turned out—he had moved.** Even occupants who ignored certified mail notice slips addressed to the owner (if any had been left) might scrawl the owner's new address on the notice packet and leave it for the postman to retrieve, or notify Jones directly. <u>Íd.</u>, págs. 234-235 (citas omitidas) (énfasis suplido).

Es decir, el Tribunal sugirió que, cuando la primera notificación se devuelve por no haberse reclamado, una medida adicional disponible, entre muchas otras, es enviar la notificación **por correo regular**. Esto, porque, aunque el envío por correo certificado tiene sus beneficios, en muchas ocasiones causa que la notificación sea menos probable. Cabe recordar que las dos notificaciones del Estado de Arkansas fueron por correo certificado, pero el Tribunal Supremo federal de todos modos concluyó que la notificación no fue adecuada.

Considero que estos tres casos denotan el mismo razonamiento: violaría el debido proceso de ley que se realice una actuación gubernamental suponiendo que la parte afectada fue notificada, a pesar de que la correspondencia fue devuelta por el servicio postal. Claro está, cada caso atiende la situación de hechos particular allí presente. En Rivera v. Jaume, supra, por ejemplo, el problema principal era que el tribunal descansó completamente en la dirección provista por la señora Jaume Andújar, a pesar que la notificación fue devuelta no reclamada. Además, se desestimó sumariamente la demanda del señor Rivera Báez sin realizar tan siquiera una vista evidenciaria.

Nada de lo expresado por el Tribunal Supremo de Puerto Rico en Rivera v. Jaume, supra, y en R & G v. Sustache, supra, implica que es constitucionalmente suficiente una notificación de una determinación gubernamental adversa que se envía a la dirección correcta, pero se devuelve sin reclamar. De hecho, luego de discutir ambos casos, el

Profesor William Vázquez Irizarry señaló que "el razonamiento utilizado por nuestro Tribunal Supremo fue recientemente avalado por el Tribunal Supremo de los Estados Unidos en el caso *Jones v. Flowers*". W. Vázquez Irizarry, Procedimiento Civil, 75 Rev. Jur. UPR 175, 221 (2006). El Profesor argumentó que "[a]unque la decisión federal se da en el contexto de notificaciones del Estado, lo cierto es que el principio consignado es el mismo en cuanto al requerimiento de medidas adicionales en casos de notificaciones devueltas por correo y confirma el curso decisorio de nuestro Tribunal". Íd., pág. 222.

Por consiguiente, una lectura armoniosa de estos casos es que, si la notificación de una actuación que afecta intereses propietarios se devuelve sin reclamar, el Estado debe tomar medidas adicionales razonables para procurar que la notificación llegue al afectado. Así evitamos que se vulnere el requisito de notificación adecuada, elemento fundamental del debido proceso de ley consagrado en nuestra Constitución.

II

Aplicando el análisis expuesto al caso particular ante nos, considero que la Autoridad de Energía Eléctrica (AEE) no cumplió con el requisito de notificación adecuada que establece nuestro ordenamiento jurídico. La AEE no podía tomar livianamente que las notificaciones se devolvieron sin ser reclamadas. En cambio, de tenerlo disponible, la AEE debió realizar algún esfuerzo razonable adicional para

notificar al Sr. José Vendrell López el monto total adeudado y el proceso para revisar su determinación.[10] Veamos.

Según el esquema reglamentario de la AEE, las notificaciones enviadas versan sobre procesos distintos y con consecuencias diferentes. Además, el Reglamento Núm. 7982 requiere ambas notificaciones. La primera notificación incluye la querella y una advertencia de un término de diez días para solicitar una reunión o una reconsideración. En cambio, la segunda notificación menciona que, como no se solicitó la reconsideración de la querella (re: primera notificación), la AEE puede suspender el servicio de energía eléctrica. Por otro lado, también le informa a la parte su derecho a solicitar una revisión ante la Secretaría de Procedimientos Adjudicativos de la Autoridad de Energía Eléctrica (SPAAEE) en un término de veinte días. Por lo tanto, dos notificaciones distintas requeridas por el Reglamento se devolvieron y ninguna se notificó nuevamente. Véase Asoc. Residentes v. Montebello Dev. Corp., 138 DPR 412, 421 (1995) ("el debido proceso de ley requiere, como regla general, la notificación o citación real y efectiva, ajustada a los preceptos estatutarios aplicables").

La AEE conocía que el señor Vendrell López no fue notificado de la querella administrativa ni del proceso para defenderse de la actuación administrativa. Además de que el Reglamento las exige, estas se requieren por el debido proceso, pues imputaban consumo ilegal de energía eléctrica,

---

[10] El monto total adeudado es $ 13,687.18. El desglose es el siguiente: $ 11,514.70 por consumo no facturado, $ 672.48 por gastos administrativos y $ 1,500 por una multa administrativa. Apéndice, pág. 44.

imponían una multa administrativa y avisaban la posibilidad de suspender el servicio de energía eléctrica. Es decir, la AEE tomó una determinación adversa contra los intereses propietarios del señor Vendrell López. En una circunstancia como esta, continuar con el procedimiento administrativo y sostener que la factura advino final y firme, no garantiza el derecho del señor Vendrell López a tener un proceso justo. Marrero Caratini v. Rodríguez Rodríguez, supra. Si el método utilizado debe estar razonablemente calculado para informar al demandado sobre la reclamación en su contra, no se cumple ese estándar cuando el Estado, a pesar ser alertado de la posibilidad de no estar cumpliendo con los requisitos constitucionales del debido proceso, no toma las medidas adicionales a su alcance. Rivera v. Jaume, supra, pág. 580; R & G v. Sustache, supra, pág. 503; Jones v. Flowers, supra, pág. 229.

A tenor con lo anterior, procede evaluar cuáles medidas razonables adicionales, si alguna, tenía la AEE a su disposición. Considero que la AEE podía, por ejemplo, enviar las notificaciones por correo regular. Jones v. Flowers, supra, págs. 234-235. De hecho, cuando la AEE le cursó la factura al señor Vendrell López por correo regular, este recibió la misma y rápidamente acudió a las oficinas de la AEE. La Mayoría critica exigir otra notificación por correo regular porque entiende que es menos rigurosa. No obstante, el Tribunal Supremo federal descartó un argumento similar, aunque no idéntico:

The Solicitor General argues that requiring further effort when the government learns that notice was not delivered will cause the government to favor modes of providing notice that do not generate additional information—for example, starting (and stopping) with regular mail instead of certified mail. We find this unlikely, as we have no doubt that the government repeatedly finds itself being asked to prove that notice was sent and received. Using certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received. That added security, however, comes at a price—the State also learns when notice has not been received. Íd., pág. 237.

Es decir, el Estado puede continuar enviando la primera o la segunda notificación por correo certificado por los beneficios que produce, pero si se devuelven sin reclamarse (i.e., la persona no fue notificada) no puede ignorar ese hecho y tiene que tomar alguna medida adicional. Aunque enviarla por correo regular pudiera parecer una medida menos rigurosa, el envío por correo regular -vis-à-vis correo certificado- puede hacer más probable que la parte reciba la notificación. Íd., págs. 234-235.

Otra crítica aparente es qué pasaría si la parte afectada argumenta que tampoco recibió la carta enviada por correo regular. Sin embargo, considero que el Estado satisface el debido proceso de ley cuando **envía** la notificación por correo regular a la dirección conocida. Es decir, no tiene que probar que la parte afectada la recibió. Para estos eventos aplicaría la Regla 304 (23) de Evidencia, 32 LPRA Ap. VI, que dispone que "[u]na carta dirigida y cursada por correo debidamente, fue recibida en su

oportunidad". De satisfacer los elementos que activan la presunción, el Estado cumple con el esfuerzo adicional requerido. Le correspondería a la parte contraria rebatir la presunción.

Por otro lado, la necesidad de realizar esfuerzos adicionales aplica tanto cuando la notificación se envía a la dirección correcta, pero la parte afectada no se encuentra en ese momento, como cuando se mudó de la propiedad. Íd., pág. 234. Vemos, pues, que lo relevante no es si se envió a la dirección correcta, sino que si el Estado se entera que la notificación no se recibió no puede cruzarse de brazos y pretender que lo fue. Aunque uno de los beneficios del correo certificado es que avisa el momento que la notificación se recibió, "[t]hat added security, however, comes at a price – the State also learns when notice has not been received". Íd., pág. 237.

Cabe mencionar que el señor Vendrell López sostuvo que su ex esposa es quien vive en la propiedad.[11] La norma de Jones v. Flowers, supra, también atiende esta situación, pues el Tribunal concluyó que, aunque el actual ocupante podría ignorar una nota (*slip*) del correo certificado, una carta regular dirigida a éste podría abrirse y leerse. Íd., pág. 235. Desde luego, no hay manera que el Estado sepa exactamente por qué una notificación se devolvió sin reclamar. Ahora bien, cuando utilice el servicio de correo certificado, y se entere que se devolvió sin reclamar, el Estado debe tomar medidas adicionales como, por ejemplo,

---

[11] Apéndice, pág. 80.

enviarla por correo regular. De este modo, aunque la parte afectada ya no resida en la propiedad, al menos el actual ocupante probablemente recibirá la notificación y podrá notificarle. Íd.

En fin, toda la controversia se reduce a qué podemos esperar del Estado una vez se entera que la persona **no recibió la notificación**. Aquí la AEE argumenta que el tiempo para recurrir ante la SPAAEE comenzó a transcurrir a partir de la segunda notificación por correo certificado. Claramente esto sería injusto y violaría el debido proceso de ley porque la AEE -por el mecanismo de notificación que adoptó- conocía que las notificaciones no se recibieron. Para cumplir con el debido proceso, la AEE podía simplemente enviar por correo regular las notificaciones.

Por otro lado, los argumentos adicionales expuestos por la Mayoría tampoco me convencen. Por ejemplo, la Mayoría sostiene que "en *Jones v. Flowers*, el interés protegido era uno de mayor envergadura, pues se trataba del derecho fundamental a la propiedad de una persona". Sentencia, pág. 16. Ahora bien, en las páginas anteriores expresa que "dado que a las agencias administrativas ejercen una función adjudicativa en nuestro País, al interferir con los intereses de libertad y propiedad de los individuos, la garantía a un debido proceso de ley se ha hecho extensiva a dichas instrumentalidades". Sentencia, pág. 9. Más allá de las propias expresiones de este Tribunal, no me cabe la menor duda de que nuestra garantía constitucional exige una verdadera notificación adecuada de una determinación

administrativa que impone una multa, que advierte sobre la posible suspensión de servicios esenciales y que establece una factura que advendría final si la parte no logra impugnarla. Recordemos que el debido proceso de ley no es una garantía estática e inmutable, sino que varía y se conforma a las nuevas situaciones que confronta. R & G v. Sustache, supra, pág. 501.

Finalmente, en otro intento de distinguir el caso de Jones v. Flowers, supra, la Mayoría sostiene que "en el caso que nos ocupa, la controversia versa sobre la suspensión de un servicio brindado por el Estado a una persona que, tras intencionalmente incumplir con las obligaciones impuestas en ley para disfrutar del mismo, se rehúsa a acatar el procedimiento administrativo dispuesto para atender este tipo de asunto". Sentencia, pág. 16. En primer lugar, resulta desacertado concluir que el señor Vendrell López hizo caso omiso a las primeras dos notificaciones, pues Jones v. Flowers, supra, destacó los problemas que presenta el correo certificado y reconoció que su uso puede hacer la notificación menos probable. Íd., págs. 234-235. Por otro lado, resulta increíble y contradictorio pensar que el señor Vendrell López rehusó intencionalmente acatar el procedimiento administrativo, pero tan pronto recibió la factura por correo regular acudió a la AEE para impugnar la determinación. Además, no consta en el expediente prueba alguna de que el señor Vendrell López incumplió **intencionalmente** con las obligaciones impuestas por ley o que **rehusó a acatar** el procedimiento administrativo. El

proceso administrativo del cual hoy es excluido existe, precisamente, para poder dilucidar esos asuntos.[12] Ahora bien, incluso de ser cierto, el presunto incumplimiento no exime del requisito de una notificación adecuada y oportuna.[13]

Por todo lo anterior, coincido con el Tribunal de Apelaciones en que las dos notificaciones por correo certificado que se devolvieron por el servicio postal porque no se reclamaron son defectuosas. De hecho, en su resolución, el Juez Administrativo de la AEE **no utilizó** esas notificaciones como punto de partida del término de veinte días para recurrir ante la SPAAEE. En cambio, entendió que la entrega personal de éstas el 22 de octubre de 2015 activó el término. No obstante, esa premisa también es errónea, pues en esa reunión le indicaron que el cargo "ya fue facturado y que no se detiene proceso de corte".[14] Además, en la reunión del 29 de octubre de 2015 el abogado del señor Vendrell López expresó que presentaría la apelación en la SPAAEE, pero le orientaron "que el término establecido para este tipo de reclamación venció".[15] Considero, pues, que los términos aplicables nunca comenzaron a transcurrir, pues no es adecuada una notificación que informa el derecho a un procedimiento y, simultáneamente, indica que ya no lo tienes

---

[12] A modo de comparación, recordemos que en Rivera v. Jaume, supra, pág. 582, citamos un caso que validó la constitucionalidad de la notificación devuelta porque se realizó una **vista evidenciaria** donde se determinó "que el demandado tenía conocimiento de la reclamación en su contra y que, en efecto, había rehusado recibir el emplazamiento". Íd., pág. 582.

[13] Véase Jones v. Flowers, supra, pág. 232 ("[T]hat property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property").

[14] Apéndice, pág. 52.

[15] Íd., pág. 67.

disponible. Por esta razón, el foro apelativo intermedio concluyó correctamente que la AEE no puede, en estos momentos, suspender el servicio eléctrico o cobrar el monto exigido en la querella.

En fin, no estoy de acuerdo con reducir el requisito de notificación adecuada a un mero gesto. Si el Estado conoce que la parte afectada no se notificó, pero no toma medidas adicionales para remediar esta situación, viola el debido proceso de ley. En esta ocasión, le correspondía a este Tribunal velar por el cumplimiento de una garantía constitucional de tanta envergadura. Después de todo, somos nosotros quienes tenemos la última palabra sobre cuál es el alcance de esas garantías.

Maite D. Oronoz Rodríguez
Jueza Presidenta